PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Fl.
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward, Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable, Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.,<br><br>Defendant. | Adv. Proc. No. 21-03004 |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

**TABLE OF CONTENTS**

<u>**Page**</u>

I. PRELIMINARY STATEMENT. ................................................................................... 1

II. BACKGROUND. ............................................................................................................ 3

III. OBJECTIONS.................................................................................................................. 6

    A. The Adversary Proceeding -Predicated on Bankruptcy Code Section 542- is a Core Matter Over Which the Bankruptcy Court Has Constitutional Authority to Issue a Final Ruling. ............................................................................. 6

    B. Other Important Factors, Notably Preventing Forum Shopping, Strongly Militate Against Withdrawal of the Reference to the Bankruptcy Court. ........... 11

    C. Even If the Court Were to Determine That Withdrawal of the Reference Were Appropriate, the Reference to the Bankruptcy Court Should Not Be Withdrawn Until the End of All Pre-Trial Matters To Be Handled By the Bankruptcy Court in the Adversary Proceeding. ................................................. 12

IV. CONCLUSION............................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Badami v. Sears (In re AFY, Inc.)*
  461 B.R. 541 (8th Cir. B.A.P. 2012) ................................................................................................ 9

*Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*
  2014 U.S. Dist. LEXIS 91267 (S.D.N.Y. July 3, 2014) .......................................................... 9

*Blackwell v. Zollino*
  267 B.R. 724 (Bankr. W.D. Tex. 2001) ................................................................................. 13

*Burns v. Dennis (In re Se. Materials, Inc.)*
  467 B.R. 337 (Bankr. M.D.N.C. 2012) ................................................................................. 10

*Chapter 11 Trustee v. Lowry (In re Pearlman)*
  2008 U.S. Dist. LEXIS 22004 (M.D. Fla. March 20, 2008) ................................................. 12

*Chow v. Prince (In re Prince)*
  2012 Bankr. LEXIS 1348 (Bankr. E.D. Tex. Mar. 30, 2012) ................................................ 7

*City Bank v. Compass Bank*
  2011 U.S. Dist. LEXIS 129654 (W.D. Tex. Nov. 9, 2011) ................................................... 13

*Faulkner v. Berg (In re Heritage Org.), L.L.C.*
  2006 Bankr. LEXIS 3470 (Bankr. N.D. Tex. Dec. 15, 2006) ................................................ 11

*Geron v. Peebler (In re Pali Holdings, Inc.)*
  488 B.R. 841 (Bankr. S.D.N.Y. 2013) .................................................................................... 9

*Geron v. Peebler (In re Pali Holdings, Inc.)*
  488 B.R. 841 (Bankr. S.D.N.Y. 2013) .................................................................................... 7

*Holland America Ins. Co. v. Succession of Roy*
  777 F.2d 992 (5th Cir. 1985) ................................................................................................. 11

*In re Davis*
  538 Fed. Appx. 440 (5th Cir. 2013) ........................................................................................ 8

*In re Fang Operators*
  158 B.R. 643 (Bankr. N.D.Tex. 1993) .................................................................................... 9

*In re HA 2003, Inc.*
  2004 U.S. Dist. LEXIS 4674 (N.D. Ill. March 22, 2004) ................................................ 11, 12

*In re Rawson*
  40 B.R. 167 (Bankr. N.D. Ohio 1984) .................................................................................. 10

*In re Renaissance Hosp. Grand Prairie Inc.*
  713 F.3d 285 (5th Cir. 2013) ................................................................................................... 8

*In re Satelco, Inc.*
  58 B.R. 781 (Bankr. N.D. Tex. 1986) ................................................................................. 7, 9

*In re Willington Convalescent Home, Inc.*
  850 F.2d 50, 52 n.2 (2d Cir. 1988) ..................................................................................... 7, 10

*Lehman Bros. Holdings v. Credit Agricole Corp. & Inv. Bank (In re Lehman Bros.
  Holdings)*, 2013 U.S. Dist. LEXIS 189438 (S.D.N.Y. Aug. 8, 2013) ................................... 9

*Porretto v. Nelson (In re Porretto)*
  2012 Bankr. LEXIS 4919 (Bankr. S.D. Tex. Oct. 18, 2012) .................................................. 8

*Romo v. Montemayor (In re Montemayor)*
  547 BR. 684 (Bankr. S.D. Tex. 2016) ................................................................................... 7

*Satelco* ............................................................................................................................................ 11

*Schott v. Massengale*
  2020 U.S. Dist. LEXIS 113810 (M.D. La. June 30, 2020) ............................................ 12, 13

*Shaia v. Taylor (In re Connelly)*
  476 B.R. 223 (Bankr. E.D. Va. 2012) ................................................................................. 10

*Stern v. Marshall*
  564 U.S. 462 (2011) .............................................................................................. 3, 6, 7, 8

*Tanguy v. W.*
  134 S.Ct. 1002 (2014) ........................................................................................................... 8

*Tow v. Park Lake Cmtys., LP*
  2018 U.S. Dist. LEXIS 1720 (S.D. Tex. Jan. 4, 2018) ................................................ 6, 7, 10

## STATUTES

11 U.S.C. § 542 ........................................................................................................................ 7, 8, 11

11 U.S.C. § 542(b) ..................................................................................................... 3, 7, 8, 9, 10, 11

11 U.S.C. § 548 ................................................................................................................................. 8

28 U.S.C. § 157(b)(2) ....................................................................................................................... 9

28 U.S.C. § 157(b)(2)(C) ................................................................................................................. 8

28 U.S.C. § 157(b)(2)(E) ..................................................................................................... 6, 7, 9, 10

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE

Highland Capital Management, L.P., the above-captioned Plaintiff (the "Debtor"), by and through its undersigned counsel, hereby files this opposition (this "Opposition") to *Defendant's Motion to Withdraw the Reference* (the "Motion") [Docket Nos. 20 & 21 in Adv. Proc. No. 21-03004] filed by Defendant Highland Capital Management Fund Advisors, L.P. ("HCMFA" or "Defendant").  In support of this Opposition, the Debtor represents as follows:

### I. PRELIMINARY STATEMENT

1. It is disingenuous for Mr. James Dondero (the former principal of the Debtor from its inception until his resignation in January 2020 and ultimate ouster by the Debtor in October 2020 (as discussed below)) and entities owned and/or controlled by him, including Defendant,[2] to object to the Bankruptcy Court adjudicating this adversary proceeding ("Adversary Proceeding") and related adversary proceedings against Mr. Dondero and his affiliates ("Dondero Entities"). Over the year and a half since the Debtor's bankruptcy filing in October 2019, Dondero and the Dondero Entities have filed numerous pleadings and other documents in the Debtor's chapter 11 case,[3] appeared at various hearings before the Bankruptcy Court, and vigorously contested the Debtor on many matters (most importantly, confirmation of the Debtor's plan in February 2021). Further, with particular respect to Defendant, it filed two proofs of claim and has a multi-million dollar administrative expense claim, seeking payment from the estate, which is currently pending.

---

[2] HCMFA is owned and controlled by Mr. Dondero. HCMFA objected to the Debtor's Plan (as defined below) [Docket No. 1670 in chapter 11 case].  In the Confirmation Order (defined below) confirming the Plan, the Bankruptcy Court found that HCMFA was controlled by Mr. Dondero.  Confirmation Order, ¶ 19; *Order*, Adv. Proc. No. 21-03010-sgj-11, Adv. Docket No. 25, ¶ 1 (Bankr. N.D. Tex. Feb. 24, 2021) (the "February Order") ("[HCMFA] is controlled by Mr. Dondero.").

[3] The Court docket in the Debtor's chapter 11 case reflects, *inter alia*, approximately 61 documents filed by Mr. Dondero and 50 documents filed by HCMFA.

2.	Having lost before the Bankruptcy Court on plan confirmation, with the Debtor's Plan confirmed in February of this year, Mr. Dondero and the Dondero Entities now seek to find a more favorable audience before the District Court.  In short, Mr. Dondero and the Dondero Entities, including Defendant, are flagrantly forum shopping and continuing their attempts to drive up the Debtor's costs and expenses through abusive litigation.

3.	Importantly, as evidenced by the docket in the Debtor's chapter 11 case and the other related adversary proceedings against Mr. Dondero and Dondero-controlled entities, the Bankruptcy Court is extensively familiar with Mr. Dondero, HCMFA and the other Dondero-controlled entities, their alleged claims, and the ways in which his companies and affiliates are run and interrelated.  Given all of the preceding history in the Debtor's case, it is eminently reasonable and appropriate for the Bankruptcy Court to proceed with the adjudication of this Adversary Proceeding and the other related adversary proceedings.  Notwithstanding the foregoing, Mr. Dondero and the Dondero Entities needlessly request another level of significant expense and delay (for instance, for the District Court to get up to speed) at great cost to the Debtor's estate.

4.	The Motion is wrong on the law.  At issue in the Adversary Proceeding is the Debtor's attempt to seek turnover of property of the estate – amounts owed by HCMFA under two promissory notes that, as a result of HCMFA's failure to pay in December 2020 (an indisputable fact), are due and payable.  *See* Complaint, pp. 4-6.  Notwithstanding HCMFA's ambiguous or otherwise insufficient claims of alleged defenses to the payment of the Notes (as defined below), the key relevant facts are indisputable.  As discussed below, as a matter of policy, based on a plain

reading of section 542(b),[4] and the supporting case law presented herein, the Adversary Proceeding is a core "turnover" matter which suffers no *Stern v. Marshall* or other Constitutional infirmity.

5. Notwithstanding the foregoing, if the Court were to determine that withdrawal of the reference is appropriate, the Bankruptcy Court should handle all discovery and other pre-trial matters, including adjudicating any dispositive motions (which the Debtor anticipates filing, as necessary), based on the extensive experience of the Bankruptcy Court and the status of the Adversary Proceeding and chapter 11 case, and in the interests of judicial economy and uniform and efficient bankruptcy administration.

6. Accordingly, the Motion should be denied, and the Bankruptcy Court should proceed with the adjudication of the Adversary Proceeding.

## II. BACKGROUND

7. On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Court").

8. On October 29, 2019, the Official Committee of Unsecured Creditors (the "Committee") was appointed by the United States Trustee in the Delaware Court.

9. On December 4, 2019, the Delaware Court entered an order transferring venue of the Debtor's bankruptcy case to this Court [Docket No. 186].[5]

10. On February 22, 2021, the Bankruptcy Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and*

---

[4] Section 542(b) provides in pertinent part that "an entity that owes *a debt that is property of the estate* and that is *matured, payable on demand, or payable on order*, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor." (emphases added).

[5] Unless otherwise noted, all docket numbers refer to the docket maintained by this Court in the main proceeding.

3

*(ii) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order"), which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (as amended, the "Plan").[6]

11. The Plan has not yet gone effective and the Debtor has continued in the possession of its property and to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

12. HCMFA is owned and controlled, directly or indirectly, by Mr. Dondero. Confirmation Order, ¶ 19; February Order, ¶ 1.

13. HCMFA filed two proofs of claim (Claim Nos. 95 and 119), which were later consensually disallowed and expunged by order of the Bankruptcy Court [Docket No. 1233].

14. Because of actions taken by Mr. Dondero that were directly adverse to the interests of the estate, the Debtor requested Mr. Dondero's resignation, and Mr. Dondero resigned on or around October 9, 2020. Mr. Dondero quickly began to escalate his actions against the Debtor. At around the same time, Mr. Dondero and certain entities directly or indirectly owned and/or controlled by him (including HCMFA) ceased to perform obligations owed to the Debtor.

15. Consequently, beginning in December 2020, the Debtor filed a number of complaints (the "Complaints") against Mr. Dondero (Adv. Proc. No. 20-03190, filed on December 7, 2020; Adv. Proc. No. 21-03003, filed on January 22, 2021); HCMFA, NexPoint Advisors, L.P. ("NexPoint"), and certain other affiliated defendants (Adv. Proc. No. 21-03000, filed on January

---

[6] The confirmed Plan included certain amendments filed on February 1, 2021. *See Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Ex. B [Docket No. 1875].

4

6, 2021); HCMFA (Adv. Proc. No. 21-03004, filed on January 22, 2021); and NexPoint (Adv. Proc. No. 21-03005, filed on January 22, 2021), among others.

16. As set forth in the Complaints (as applicable), the Debtor has substantial claims against Mr. Dondero, HCMFA and other Dondero Entities for, *inter alia*, interference with the Debtor's business and operations (including threatening to have the Debtor removed as the portfolio manager of certain collateralized loan obligation vehicles) and for failing to pay amounts due and owing to the Debtor under certain demand and term promissory notes. Specifically, the Debtor commenced this action to collect more than $7.68 million in past due amounts under the Notes executed by HCMFA in favor of the Debtor (as the term "Notes" is defined and discussed further below).

17. In addition to the Notes, the Debtor has other substantial claims against HCMFA, with respect to which the Debtor reserves all rights. Among other things, HCMFA and NexPoint owe approximately $2.56 million under certain shared services and other agreements with the Debtor, as well as approximately $2.22 million in unpaid expense reimbursements.

18. As set forth in the Complaint in the Adversary Proceeding [Adv. Docket No. 1], HCMFA is the maker of two May 2019 promissory notes in favor of the Debtor (the "Notes," copies of which are attached to the Complaint as Exhibit 1 and Exhibit 2), in the original principal amount of $2,400,000 and $5,000,000, respectively (as stated in the Complaint, as of December 11, 2020, the total outstanding principal and accrued interest due under the Notes was at least approximately $7,687,653). Indisputably, HCMFA failed to make required payments under the Notes due by December 11, 2020, and the Notes are due and payable. *See* Complaint, pp. 4-6. Notwithstanding any ambiguous claims of alleged defenses to the payment of the Notes and obvious goal to forum shop, the relevant facts are plain and indisputable. These matters, and this

Adversary Proceeding, are straightforward, relatively simple matters that can and should be promptly and efficiently adjudicated by the Bankruptcy Court.[7]

### III. OBJECTIONS

**A. The Adversary Proceeding -Predicated on Bankruptcy Code Section 542- is a Core Matter Over Which the Bankruptcy Court Has Constitutional Authority to Issue a Final Ruling.**

19. HCMFA argues that the Adversary Proceeding is a non-core matter (as a statutory matter) and that the Bankruptcy Court lacks Constitutional authority to decide the Adversary Proceeding (Motion, pp. 5-8). HCMFA is wrong on both points.

20. The Complaint is an action for turnover under 11 U.S.C. § 542(b) – an action necessitated by HCMFA's willful failure to pay the Note.[8] A significant number of courts in Texas have logically concluded that the U.S. Supreme Court's ruling in *Stern v. Marshall,* 564 U.S. 462 (2011) ("*Stern*") does not limit a bankruptcy court's authority to decide turnover claims that are described as core matters in 28 U.S.C. § 157(b)(2)(E).[9]

21. For example, in *Tow v. Park Lake Cmtys., LP*, 2018 U.S. Dist. LEXIS 1720 (S.D. Tex. Jan. 4, 2018), the District Court for the Southern District of Texas treated a claim to recover an account receivable pursuant to section 542(b) as a "core" claim and held that treatment did not afoul of *Stern*. As the *Tow* court explained:

> Title 28 U.S.C. § 157(b)(2)(E) provides that "[c]ore proceedings include, but are not limited to—(E) orders to turn over property of the estate." [Defendant] argues that this case is a non-core proceeding because it is based on state collection law.

---

[7] As discussed further herein, if the Court were to determine to withdraw the reference, the Debtor submits, given the extensive experience of the Bankruptcy Court and the status of the Adversary Proceeding and chapter 11 case, the Bankruptcy Court should, at a minimum, handle all discovery and other pre-trial matters, including adjudicating any dispositive motions.

[8] While the Complaint also includes certain breach of contract allegations and claims, as discussed further herein, such matters are not dispositive in this case in determining the core/non-core nature of the Adversary Proceeding. As explained herein, the Bankruptcy Court has statutory and Constitutional jurisdiction over this proceeding.

[9] 28 U.S.C. § 157(b)(2)(E) provides that core proceedings include "orders to turn over property of the estate."

6

> The Bankruptcy Court acknowledged a line of trial-court cases supporting this argument. These cases hold "that an action by a trustee to recover an account receivable based on state contract law does not fall within the scope of turnover actions contemplated by § 542(b) and 28 U.S.C. § 157(b)(2)(E), and therefore such an action is a non-core proceeding." [S]*ee, e.g., In re Satelco, Inc.*, 58 B.R. 781, 789 (Bankr. N.D. Tex. 1986) ("[T]his Court holds that actions to collect accounts receivable based upon state law contract principles do not fall within the scope of turnover actions as contemplated by § 542 and § 157(b)(2)(E), absent a final judgment from a court of competent jurisdiction, a stipulation, or some other binding determination of liability."). But the Bankruptcy Court correctly identified a second line of cases, including circuit-court precedent, standing for the opposite proposition. *See, e.g., In re Willington Convalescent Home, Inc.*, 850 F.2d 50, 52 n.2 (2d Cir. 1988) ("Although 'actions on account and debt and contract generally arise under state law,' **§ 542(b) 'sufficient[ly] . . . arrogate[s] the general law concepts and transform[s] them into bankruptcy law.' 'The mere fact that' Connecticut denies that it owes the matured debt for Willington's services because of a recoupment right 'does not take the trustee's action outside the scope of section 542(b).'"**).
>
> **The account receivable at issue is property owed to the estate that the trustee seeks to collect through this turnover suit. This claim is expressly covered by § 157(b)(2)(E) of the Bankruptcy Code, making this a core proceeding.**

2018 U.S. Dist. LEXIS 1720, at *3-*5 (emphases added).[10]

22. Moreover, the *Tow* court held that treating a turnover claim as a "core" claim was "consistent with *Stern v. Marshall*." *Id*. at *5. *Accord, Romo v. Montemayor (In re Montemayor)*, 547 BR. 684, 692 (Bankr. S.D. Tex. 2016) (bankruptcy court had authority under *Stern* to issue a final order in an action brought pursuant to section 542(b), because an action "to turn over assets belonging to the bankruptcy estate [is] a matter which solely concerns federal bankruptcy law"); *Chow v. Prince (In re Prince)*, 2012 Bankr. LEXIS 1348, at *12-14 (Bankr. E.D. Tex. Mar. 30, 2012) (holding that *Stern* applies only to "'counterclaims by the estate against persons filing claims

---

[10] The *Tow* case specifically involved an account receivable, but courts have recognized that notes and accounts receivable are functionally the same for purposes of section 542. *See, e.g., Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 851 (Bankr. S.D.N.Y. 2013) ("A note receivable, like any other asset that undisputedly belongs to the debtor, properly may appear on a debtor's balance sheet, being replaced by a corresponding asset entry for cash when the note is paid off.").

against the estate,' 28 U.S.C. § 157(b)(2)(C), which are based on state law," and that *Stern* did not affect the bankruptcy court's authority to decide fraudulent transfer and turnover claims, which "flow directly from a federal statutory scheme; namely, 11 U.S.C. §§ 542, 544(b) and 548").[11]

23.　The opinion of the Bankruptcy Court for the Southern District of Texas in *Porretto v. Nelson (In re Porretto)*, 2012 Bankr. LEXIS 4919, (Bankr. S.D. Tex. Oct. 18, 2012), also supports the Debtor's foregoing views. Specifically in *Porretto*, the court held that an action by the trustee of the debtor's chapter 7 case seeking the turnover of funds by the debtor's ex-spouse – essentially payments due on account of matured debts under a prepetition divorce agreement (the "Agreed Final Decree of Divorce") – was a core matter as a turnover proceeding pursuant to section 542(b), and that the bankruptcy court was constitutionally authorized to enter a final judgment in the action. *Id.* at *11-*12. In determining these issues and ultimately ordering the ex-spouse to turnover the funds (payments) to the trustee, the *Porretto* court reviewed, interpreted and applied the parties' agreement (*id.* at *13-*18) and further, acknowledged that it would conduct a trial to resolve the parties' disputes over the amounts of the applicable debts and obligations to be paid by the defendant (*id.* at n. 7).

24.　Many other courts outside the Fifth Circuit have reached similar conclusions based on the nature and purpose of section 542 turnovers and that the note or account receivable is indisputably property of the bankruptcy estate:

> A turnover action's essence is in bringing the estate's property into its custody — or in the promissory note and accounts receivable collection actions for which turnover also may be invoked as a statutory matter, in converting a note or account receivable that already is property of the estate into cash. A note receivable, like any other

---

[11] *See generally In re Davis*, 538 Fed. Appx. 440, 443 (5th Cir. 2013), *cert. denied sub nom. Tanguy v. W.*, 134 S.Ct. 1002 (2014) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect.' . . . We decline to extend *Stern*'s limited holding herein."); *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern*'s 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2). . . .").

8

asset that undisputedly belongs to the debtor, properly may appear on a debtor's balance sheet, being replaced by a corresponding asset entry for cash when the note is paid off. When the turnover power is properly invoked, it is simply an effort to recover property — or *on* property — that is *already* property of the estate. That, in turn, invokes the court's *in rem* jurisdiction over the bankruptcy *res*. . . . *Stern* has nothing to do with the Court's in rem jurisdiction to administer property of the estate.

*Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 850 (Bankr. S.D.N.Y. 2013).[12]

25. HCMFA essentially relies upon three older cases specifically for its argument that the instant turnover complaint is non-core (Motion, pp. 6-7) -- *In re Satelco, Inc.*, 58 B.R. 781 (Bankr. N.D. Tex. 1986); *In re Mirant Corp.*, 316 B.R. 234, 240 (Bankr. N.D. Tex. 1986); and *In re Fang Operators*, 158 B.R. 643, 645 (Bankr. N.D.Tex. 1993). *Mirant* and *Fang Operators* cited *Satelco* without any instructive discussion or elaboration. The *Satelco* case itself was rigidly focused on how the account receivable obligation in that case was disputed by the defendant-obligor. *See Satelco*, 58 B.R. at 786 (allowing for bankruptcy court to hear any disputed account receivable case "would turn mere allegation into fact; by asserting that the money attributable to an account receivable is property of the estate"). However, as supported by the plain provisions

---

[12] *See also, e.g., Lehman Bros. Holdings v. Credit Agricole Corp. & Inv. Bank (In re Lehman Bros. Holdings)*, 2013 U.S. Dist. LEXIS 189438, at *10 (S.D.N.Y. Aug. 8, 2013) ("Adjudication of whether a matured debt is property of the estate is undoubtably a 'core' matter under the statutory framework for bankruptcy jurisdiction, as it is a critical part of a bankruptcy court's administration of the debtors' estates. Turnover proceedings under section 542 of the Bankruptcy Code, likewise, 'stem[ ] from the bankruptcy itself.' Courts applying *Stern* have held that bankruptcy courts have authority to enter final orders in turnover actions because 'the exercise of exclusive jurisdiction over all the debtor's property' is among the '[c]ritical features of every bankruptcy proceeding.'" (citations omitted)); *Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*, 2014 U.S. Dist. LEXIS 91267, at *10-17 (S.D.N.Y. July 3, 2014) ("section 542(b) is concerned with the collection rather than the creation, recognition, or liquidation of a matured debt"; "Orders to turn over property of the estate are expressly listed as core proceedings under section 157(b)(2)(E). The scope and purpose of turnover proceedings suggests that, as a general matter, this classification survives *Stern*. . . . Not surprisingly, the reported post-*Stern* decisions have overwhelmingly held that bankruptcy judges can constitutionally enter final judgments in turnover actions. . . ." (citations omitted)); *Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541 (8th Cir. B.A.P. 2012) (concluding that bankruptcy judge could issue a final judgment in a turnover proceeding relating to the litigants' obligations under a split dollar agreement; "[T]he Supreme Court itself has cautioned that its holding is a narrow one, affecting only . . . one small part of the bankruptcy judges' authority. Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional").

9

of section 542(b) and considerable case law, it is inapposite that HCMFA may have any alleged defenses.[13] The notes are due and payable as required by section 542(b).

26.  As explained by one bankruptcy court:

> To properly constitute a core proceeding under § 157(b)(2)(E), the debt must be "matured, payable on demand, or payable on order." "Matured" refers to "debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event." …. While the Defendants assert that they are not indebted to the Trustee, it is simply not relevant that the Defendants dispute liability on the instrument. The presence of a dispute does not preclude a debt from being matured. It is sufficient if the complaint alleges the existence of a matured debt. A cause of action is a turnover proceeding under § 542(b) of the Bankruptcy Code where it seeks the collection rather than creation or liquidation of a matured debt. The Court finds that the Trustee's attempt to enforce the Taylor Note qualifies as a turnover action under § 542(b). Consequently, the Adversary Proceeding is a core proceeding under § 157(b)(2)(E).

*Shaia v. Taylor (In re Connelly)*, 476 B.R. 223, 230 (Bankr. E.D. Va. 2012) (citations omitted). *See also In re Willington Convalescent Home, Inc.*, 850 F.2d at 52 n.2 ("The mere fact that' Connecticut denies that it owes the matured debt for Willington's services because of a recoupment right 'does not take the trustee's action outside the scope of section 542(b).' (internal quotation and citation omitted)); *Tow*, 2018 U.S. Dist. LEXIS 1720, at *4-*5 (following *Willington*); *Porretto*, 2012 Bankr. LEXIS 4919, at *7 (bankruptcy court determined the turnover proceeding was a core matter, and as a part thereof, the bankruptcy court would hold a trial on the parties' disputes over the applicable amounts); *Burns v. Dennis (In re Se. Materials, Inc.)*, 467 B.R. 337, 354-55 (Bankr. M.D.N.C. 2012) (trustee sought "to collect a matured, liquidated debt that is property of the estate according to the Debtor's records," the trustee stated a claim for turnover under Section 542(b) which was core under Section 157(b)(2)(E)," notwithstanding that the defendants disputed liability); *In re Rawson*, 40 B.R. 167, 169 (Bankr. N.D. Ohio 1984) ("The

---

[13] Notably, HCMFA did not assert any specific defenses in its Answer [Adv. Docket No. 6].

trustee's complaint clearly alleges that Dalessio and Stamm owe a matured debt that is property of the estate. The mere fact that the defendants deny these allegations does not take the trustee's action outside the scope of section 542(b)." (citations omitted)).

27. Moreover, the *Satelco* court's reasoning is an untenable slippery slope; under its reasoning, basically any obligor under a valid promissory note or an account receivable can raise spurious or other invalid defenses to have the possibly more favorable district court adjudicate the matter. Thus, simply raising baseless defenses or other disputes would allow the defendant obligor to forum shop. As a matter of policy, based on a plain reading of section 542, and the supporting case law presented herein, this cannot be correct.

    **B.**    **Other Important Factors, Notably Preventing Forum Shopping, Strongly Militate Against Withdrawal of the Reference to the Bankruptcy Court.**

28. In determining whether to withdraw the reference to the Bankruptcy Court, the District Court may consider other factors including judicial economy, promotion of uniformity and efficiency in bankruptcy administration, reduction of forum shopping, delay and costs to the parties, and the particular court's familiarity with the case. *See, e.g., Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985); *Faulkner v. Berg (In re Heritage Org., L.L.C.*, 2006 Bankr. LEXIS 3470, at *12-*15 (Bankr. N.D. Tex. Dec. 15, 2006) (Hon. Judge Houser); *In re HA 2003, Inc.*, 2004 U.S. Dist. LEXIS 4674, at *7-*8 (N.D. Ill. March 22, 2004).

29. Mr. Dondero's and HCMFA's improper attempt to forum shop is detailed above – which should be heavily weighed by the Court. But moreover, as evidenced by the docket in the Debtor's chapter 11 case and the other related adversary proceedings against Mr. Dondero and Dondero Entities, the Bankruptcy Court is extensively familiar with Mr. Dondero and the Dondero Entities, the ways in which his companies and affiliates were run and interrelated, and their purported claims. Given all of the history in the Debtor's case, it is reasonable and appropriate for

11

the Bankruptcy Court to proceed with the adjudication of this action and the other related adversary proceedings. Nonetheless, Mr. Dondero and the Dondero Entities seek another level of significant expense and delay (a District Court that they hope is more favorable) at great cost to the Debtor's estate. The Court should reject the continued tactics of Mr. Dondero and the Dondero Entities to manipulate the bankruptcy process, obstruct the Debtor's reorganization, and waste estate resources. *See, e.g., HA 2003, Inc.*, 2004 U.S. Dist. LEXIS 4674, at *7-*8 (reference not withdrawn where the bankruptcy court "already is familiar with the parties" and it "is already overseeing discovery in this and related adversaries"; dealing specifically with state insurance contract law); *Chapter 11 Trustee v. Lowry (In re Pearlman)*, 2008 U.S. Dist. LEXIS 22004, at *7 (M.D. Fla. March 20, 2008) ("[W]ithdrawal would delay and disturb the bankruptcy process and create additional expense for the parties. Additionally, permitting withdrawal based solely on the presence of ILSA [Interstate Land Sales Full Disclosure Act] issues would encourage forum-shopping. Based on these factors, the Court in its discretion denies the motion with respect to permissive withdrawal."); *Schott v. Massengale*, 2020 U.S. Dist. LEXIS 113810, at *10, *16-*17 (M.D. La. June 30, 2020) ("the use of the debtor's and creditors' resources efficiently 'in efforts to administer the debtor's estate and to resolve any related litigation is of significant importance'"; "A motion to withdraw the reference provides 'significant risks of forum shopping because a party can first observe the bankruptcy judge's rulings, and then decide whether to bring the motion."; "a motion to withdraw reference can be subterfuge for opportunistic delay or forum-shopping").

C. **Even If the Court Were to Determine That Withdrawal of the Reference Were Appropriate, the Reference to the Bankruptcy Court Should Not Be Withdrawn Until the End of All Pre-Trial Matters To Be Handled By the Bankruptcy Court in the Adversary Proceeding.**

30. In all events, if the Court were to determine to withdraw the reference, particularly given the extensive experience of the Bankruptcy Court and the status of the Adversary Proceeding

12

and chapter 11 case (as discussed above), the Bankruptcy Court should, at a minimum, handle all discovery and other pre-trial matters, including adjudicating any dispositive motions. Such approach would further the important goals of judicial economy, the promotion of uniformity and efficiency in bankruptcy administration, and the mitigation of forum shopping and the delays/costs to the estate. *See, e.g., Schott v. Massengale*, 2020 U.S. Dist. LEXIS 113810, at *18 ("[T]he Court finds that withdrawing only the trial portion, leaving the remainder of the case to be handled by the bankruptcy court is the more pragmatic option for efficient case administration. In addition, it decreases the risk of forum shopping, while protecting the right to a jury trial in an Article III court if the case proceeds to trial."); *Blackwell v. Zollino*, 267 B.R. 724, 731 (Bankr. W.D. Tex. 2001) ("The district court has the option, at that point of withdrawing the entire matter, or withdrawing only the trial portion, leaving pre-trial and discovery matters to be handled by the bankruptcy judge."); *City Bank v. Compass Bank*, 2011 U.S. Dist. LEXIS 129654 (W.D. Tex. Nov. 9, 2011) (even though claim might be non-core matter and defendant bank might be entitled to jury trial, withdrawal of reference not justified at this point since the bankruptcy court was familiar with the case and could more efficiently manage all pretrial proceedings including by narrowing trial issues, and the district court had forum shopping concerns).

## IV. **CONCLUSION**

For the reasons set forth herein, the Debtor respectfully requests that the Court deny the Motion and grant such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: May 4, 2021. | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)<br>Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)<br>John A. Morris (NY Bar No. 266326) (*pro hac vice*)<br>Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)<br>Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)<br>10100 Santa Monica Boulevard, 13th Floor<br>Los Angeles, CA  90067<br>Telephone: (310) 277-6910<br>Facsimile:  (310) 201-0760<br>Email:      jpomerantz@pszjlaw.com<br>                 ikharasch@pszjlaw.com<br>                 jmorris@pszjlaw.com<br>                 gdemo@pszjlaw.com<br>                 hwinograd@pszjlaw.com |
| | -and- |
| | **HAYWARD PLLC** |
| | */s/ Zachery Z. Annable*<br>Melissa S. Hayward<br>Texas Bar No. 24044908<br>MHayward@HaywardFirm.com<br>Zachery Z. Annable<br>Texas Bar No. 24053075<br>ZAnnable@HaywardFirm.com<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100<br>Fax: (972) 755-7110 |
| | *Counsel for the Debtor and Debtor-in-Possession* |

14