Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Ste. 3800
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| In re | § | |
|---|---|---|
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Adv. No. 21-03004 |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. | § § § § | |
| Defendant. | § | |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO WITHDRAW THE REFERENCE**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW Highland Capital Management Fund Advisors, L.P., the defendant (the "Defendant") in the above styled and numbered adversary proceeding (the "Adversary Proceeding"), and files this its *Reply* in support of its *Defendant's Motion to Withdraw the Reference* (the "Motion"), respectfully stating as follows:

### I.  SUMMARY

1. This Adversary Proceeding is as archetypical a state law, jury right claim as one can get. Rather than concede this obvious fact and address the jurisdictional issues in a scholarly manner, Highland Capital Management, L.P. (the "Debtor"), in its *Plaintiff's Opposition to Defendant's Motion to Withdraw the Reference* (the "Response"), again pulls the "Dondero" card in the belief that, if the Debtor simply states the name "Dondero" often enough—thirty-eight (38) times in its Response for a case where Mr. Dondero is not even a party!—somehow our Constitution, Supreme Court precedent, and this Court's own precedent go away. This Court should see through the Debtor's histrionics and focus on the cold and well-settled constitutional and jurisdictional principles involved. The reason why cases like *Northern Pipeline* and *Stern v. Marshall* exist is because aggressive litigants wished to short-circuit the process and pushed the boundaries of Article I jurisdiction past any plausible point, and bankruptcy judges let them. Reading section 542(b) as the Debtor would have the Court read it is sure to create another multi-year saga culminating in another *Stern v. Marshall* situation, which is in no one's interests.

### II.  SECTION 542(B) OF THE BANKRUPTCY CODE

2. The Debtor has sued the Defendant to collect on a disputed promissory note. Yet the Debtor argues that section 542(b) of the Bankruptcy Code, providing for the turnover of debt payable to a debtor, permits it to effectively obviate the promissory note action and move straight to collection. The Debtor's argument is little different from a plaintiff arguing that, as the federal rules provide that a federal court enforces a judgment under federal law, even though the underlying claim is a state contract claim, federal jurisdiction exists without reference to diversity and the federal court can liquidate the disputed claim in the context of postjudgment collection. This is an absurd argument on its face: a plaintiff must prevail on its claim before it can move to collection, and collection does not itself confer subject matter jurisdiction.

3. Section 542(b) of the Bankruptcy Code provides that: "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset." 11 U.S.C. § 542(b).  The logical, simple, and necessary import of this statute is simple: a debt payable to a debtor shall, postpetition, now be payable to the trustee (who may be the debtor).  As any debtor's or trustee's attorney knows, frequently an entity owing a debt to a debtor will use the fact of the bankruptcy, and an alleged resulting confusion regarding who the debt should be paid to, to simply stall the payment.  Or, a secured creditor with liens against instruments or receivables may have sent U.C.C. instructions to an account debtor to pay the account over to the secured creditor, instead of the debtor.  Section 542(b) simply removes these uncertainties and tactics.  Here, the Defendant does not dispute that, whatever amounts may be owing on the underlying alleged debt, they are owed to the Debtor.  Section 542(b) has no application.

4. Yet the Debtor would have the Court read section 542(b) as creating a new federal cause of action, and a mandatory injunctive one at that, with no defenses other than setoff, and with no trial.  Any such reading would severely violate the Constitution and Due Process and would render the statute unenforceable and void, as aptly explained by one opinion:

> to extend the proposition urged by the Debtor would mean that a Debtor may collect, by way of mandatory injunction, disputed claims to monies, claims based strictly on state law which are unliquidated and contingent.  Certainly such procedure could not be sanctioned outside bankruptcy and there is no just reason why it should be sanctioned just because the entity seeking to collect disputed funds happens to be a Debtor under the Bankruptcy Code.  To approve the proposition urged by the Debtor would be without a doubt, a gross violation of the most basic concepts of due process to which every Defendant is entitled, which involves at least the right to enjoy all the procedural safeguards otherwise available to all litigants in civil litigation.

*In re Chick Smith Ford Inc.*, 46 B.R. 515, 518 (Bankr. M.D. Fla. 1985)

5. This is why this Court's precedent—which the Debtor refers to as "three older cases"[1]—clearly provides that section 542(b) cannot be used to short-circuit the process and convert a state law claim into a federal claim. And, the Debtor ignores the District Court's opinion affirming the *Satelco* holding, wherein the District Court agreed that "collection suits by a debtor in bankruptcy against non-creditor defendants -- are not 'core' proceedings."[2] *M&E Contractors v. Kugler-Morris Gen. Contractors*, 67 B.R. 260, 262 (N.D. Tex. 1986). Thus, it is not just "three older cases" that dictate the result, but also an important opinion from the District Court. And, entirely missing from the Debtor's analysis is the Supreme Court's *Northern Pipeline* case, which forms the constitutional basis for the Bankruptcy Court's jurisdiction in the first place and which also involved a debtor suing a non-debtor on a contract claim, and which led to the Supreme Court substantially invalidating the jurisdictional provisions of the 1978 Code. *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). That opinion is even "older" than the "three older cases" derided by the Debtor, yet it remains controlling law.

6. While the Debtor cites cases from other jurisdictions for the proposition that a turnover action can be used to adjudicate disputed debt, those cases are in the minority and are wrongly decided. Rather, the large majority of cases agree with the simple proposition that section 542(b) does not apply to disputed debt: "[i]t is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes." *United States v. Inslaw Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991). *Accord In re Falzerano*, 686 F.3d 885, 887 (8th Cir. 2012) ("[t]urnover proceedings

---

[1] Response at ¶ 25. The Debtor incorrectly cites the *In re Mirant* case as a case from 1986. Response at ¶ 25. It is not. It is in fact a case from 2004. *See In re Mirant Corp.*, 316 B.R. 234 (Bankr. N.D. Tex. 2004). But, even if these cases are "older cases," that is precisely the point, for it is *stare decisis* in operation and working.

[2] Technically, the matter was before the District Court on the motions to withdraw reference in *Satelco*. The District Court denied the motion to withdraw reference, as no jury right had been invoked, leaving it to the Bankruptcy Court to submit a report and recommendation subject to *de novo* review instead. Had a jury demand been made, as in the other cases before the District Court in its combined opinion, withdrawal of the reference would have been mandatory. *M&E Contractors*, 67 B.R. at 269.

are not to be used to liquidate disputed contract claims"); *In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990) ("Turnover proceedings are not to be used to liquidate disputed contract claims"); *Trefny v. Bear Sterns Sec. Corp.*, 243 B.R. 300, 320 (S.D. Tex. 1999) ("turnover proceedings under section 542 are not to be used to liquidate disputed contract claims"); *In re M.S.V. Inc.*, 97 B.R. 721, 729 (D. Mass. 1989) ("[t]here is no room within a motion for turnover for the award of monetary damages"); *In re Conex Holdings, LLC*, 518 B.R. 792, 803 n. 58 (Bankr. D. Del. 2014) ("the Trustee cannot use the turnover provisions to liquidate contract disputes"); *In re VP Energy Inc.*, 300 B.R. 621, 625 (Bankr. W.D. Pa. 2003) ("turnover proceedings [brought under § 542(b)] are not to be used to liquidate disputed contract claims"); *In re CIS Corp.*, 172 B.R. 748, 759 (Bankr. S.D.N.Y. 1994) ("Numerous courts have therefore held that an action is non-core when property which is the subject of a significant dispute between the parties is sought to be recovered through a turnover action").

7. Indeed, as one court aptly commented, reading section 542 too broadly means that literally any claim brought by a debtor could be styled as a turnover action under one of the provisions of section 542 of the Bankruptcy Code:

> This argument however is specious in that such a construction would in effect remove any distinction between core and non-core proceedings for purposes of bankruptcy court jurisdiction. Any cause of action demanding money damages or payment of sums due under contract could be construed to be a turnover in that sense.

*In re Shaford Cos.*, 52 B.R. 832, 834 (Bankr. D.N.H. 1985).

8. Thus, while a turnover action may be statutorily core, to read it as the Debtor would have the Court read it—to provide the mechanism for the liquidation of the disputed debt—would render the action constitutionally non-core. *See Stern v. Marshall*, 564 U.S. 462, 495 (2011). And, as the Supreme Court has held throughout, Congress cannot strip a litigant of her Article III and jury rights by simply re-labeling something as a federal claim:

> Congress simply reclassified a preexisting, common-law cause of action . . . This purely taxonomic change cannot alter our Seventh Amendment analysis. Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity.

*Granfinanciera, Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 60-61 (1989).

9. Put simply, before there can be any consideration of turnover or collection, the Debtor must first prove its breach of contract claim. That claim is clearly non-core: a claim that "simply attempts to augment the bankruptcy estate . . . must be decided by an Article III court. *Stern*, 564 U.S. at 495. And, as jury rights undisputedly attach, the Bankruptcy Court cannot try the claim and the reference must be withdrawn "[r]egardless of whether one characterizes a proceeding as core or noncore." *In re Clay*, 35 F.3d 190, 194 (5th Cir. 1994) (granting writ of mandamus and "instruct[ing] the district court to withdraw the reference to the bankruptcy court and honor the Clays' demand for trial by jury before an appropriate United States District Court").

10. The latter point concerning jury rights, again ignored by the Debtor, controls the question independent of anything having to do with section 542(b) or bankruptcy jurisdiction. As the Supreme Court has made clear, "[i]t would make no difference if the equitable cause clearly outweighed the legal . . . As long as *any* legal cause is involved the jury rights it creates control." Dairy Queen v. Wood, 369 U.S. 469, 473 n. 8 (1962) (emphasis added). There is no question that jury rights attach to the promissory note claim and there can therefore be no question that those jury right control and that they mandate a withdrawal of the reference.

11. The Debtor would also have the Court believe that, because Mr. Dondero—again, not even a party—is affiliated with the Defendant, and because Mr. Dondero is allegedly vexatious, and Mr. Dondero allegedly wants to drive costs up, and because Mr. Dondero is allegedly forum shopping—or any of the other and sundry allegations the Debtor makes every time if files a pleading recently—somehow confers jurisdiction where there is none. But who is it that is forum

shopping? The Debtor clearly believes that the Bankruptcy Court will be a more favorable venue for it: "the Bankruptcy Court is extensively familiar with Mr. Dondero and the Dondero Entities, the ways in which his companies and affiliates were run and interrelated, and their purported claims." Response at ¶ 29. The question of forum shopping—to the extent that it is even relevant—cuts both ways.[3]

12. But that question is not relevant when principles of the Constitution and of subject matter jurisdiction are involved. A litigant's motivation for lawfully not consenting to bankruptcy jurisdiction and for lawfully not waiving jury rights should never be questioned by a court. It should never be the basis of a jurisdictional decision. It should never be held against a litigant. The alternative is judicial coercion or the appearance of judicial coercion, and that must never be permitted in our system. The Defendant did not file this bankruptcy case, the Defendant did not author the Bankruptcy Code, and the Defendant did not invent its jury rights. The Debtor's allegations of forum shopping and manipulation of the system, because the Defendant refuses to waive its solemn right to a trial by jury in an Article III court, should bear no portion of the Court's deliberation and its adjudication of the Motion.

---

[3] The Debtor takes many liberties with its allegations in its Response. The Defendant does not wish to clutter the Court by responding to these irrelevancies. One such allegation, however, merits comment:

> The Court docket in the Debtor's chapter 11 case reflects a number of substantive pleadings and other documents filed by the Defendant (including a motion to file a competing plan), as well as approximately 61 documents filed by Mr. Dondero and approximately 50 documents filed by HCMFA (as defined herein), another Dondero Entity.

Response at p. 1 n.3.

This is not true and is an intentionally misleading statement made by the Debtor to give the false impression that NexPoint and HCMFA have repeatedly sought relief from the Bankruptcy Court only to now seek to escape the Bankruptcy Court's jurisdiction. Almost all filings made by NexPoint and HCMFA have been defensive in nature (such as objecting to the Debtor's plan, which sought to permanently enjoin them) or procedural documents (such as a sealing motion and witness exhibit lists), all necessitated by the Debtor's actions, such as the Debtor having filed <u>four (4)</u> complaints against them, and mostly involving routine bankruptcy proceedings over which the Bankruptcy Court had core jurisdiction.

### III.    CONCLUSION

13.    The withdrawal of the reference is mandated because the Defendant has jury rights and because the promissory note claim is not core.  Whatever else may be said about the section 542(b) claim, that claim has no application and it does not confer federal jurisdiction to liquidate a disputed debt claim, or otherwise convert the most basis state law claim into a claim arising exclusively under the Bankruptcy Code.  Because the Bankruptcy Court cannot decide a dispositive motion, and because most if not all pretrial matters will govern the jury trial that only the District Court can conduct, the reference should be withdrawn immediately for judicial efficiency and to ensure that the District Court will make all pretrial decisions governing its trial.

RESPECTFULLY SUBMITTED this 18th day of May, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/  Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Julian P. Vasek, Esq.
    Texas Bar No. 24070790
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email: drukavina@munsch.com

**COUNSEL FOR HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that, on this the 18th day of May, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on the Debtor through its counsel of record.

                                    /s/  Davor Rukavina
                                    Davor Rukavina