

DATE: April 7, 2019
TO: Securities and Exchange Commission (the "SEC")
FROM: Highland Capital Management Fund Advisors, L.P. (the "Adviser")
RE: Amended Memorandum regarding the Treatment of the TerreStar Corporation ("TerreStar") Equity NAV Error in the Fund

This memorandum is intended to provide supplemental information regarding the NAV Error in the Highland Global Allocation Fund ("GAF" or the "Fund") and reflect the discussions on the March 8, 2019 call. Attendees of the call included:

(i) SEC Staff: David Bartels, Paul Cellupica, Alison Staloch, Vince DiStefano, Dan Rooney, Christian Sandoe, Kathryn Feld and Linda Hoffman;

(ii) Adviser Representatives: Thomas Surgent, Frank Waterhouse, Jason Post and Lauren Thedford;

(iii) Independent Trustee Counsel: Stacy Louizos of Drinker Biddle & Reath LLP; and

(iv) Fund and Adviser Counsel: George Zornada and Jon-Luc Dupuy of KL Gates LLP.

In connection with the Fund's conversion from an open-end fund to a closed-end fund (the "Conversion") on February 13, 2019, the Office of the Chief Accountant ("OCA") of the SEC reviewed the Adviser's fair valuation of TerreStar equity, in particular the application of Financial Accounting Standards Board Accounting Standards Update 2011-4, Topic 820, Fair Value Measurement ("ASC 820") to two transactions in TerreStar equity that occurred in March 2018 (the "March Transactions"). The OCA provided its feedback during an exit call on February 8, 2019 and subsequently confirmed no comments to the Adviser's confirmation of understanding letter on February 14, 2019.

The Adviser and Houlihan Lokey, an independent third party expert valuation consultant approved by the Board, initially determined that the March Transactions were "non-orderly" and should be given "zero weighting" for purposes of determining fair value. As reflected in the consultation, the Adviser ultimately determined that both March Transactions should be classified as "orderly." The fair valuation methodology adopted, as addressed in the consultation, weights inputs and does not reflect last sales transaction pricing exclusively in determining fair value. The "orderly" determination and adoption of the weighted fair valuation methodology resulted in NAV errors in the Fund (the "NAV Error").

After incorporation of the updated valuation into the Fund's NAV, the gross NAV Error, excluding interest, the advisory fee rebate, and processing costs, amounted to approximately $6.1 million of loss to the Fund and approximately $1.4 million of losses to Shareholders over the period between March 18, 2018 and January 19, 2019 (the "NAV Restatement Period").

**Calculation of the NAV Error**

a. For each day during the NAV Restatement Period, the Adviser analyzed the impact on the Fund's NAV resulting from the revised mark relative to the original mark for TerreStar Equity. This amount includes:

(i) "Loss to Fund", which represents the sum of the overpayment of net redemptions (and resulting remaining shareholder dilution) caused by the NAV overstatement for each day in the period where the difference in marks resulted in a NAV error in accordance with the NAV Error

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

Correction Procedures. This number is an estimate based on net investor activity for all shareholders for each period, as provided to the Adviser by the Fund's transfer agent, DST Asset Manager Solutions, Inc. (the "Transfer Agent").  This amount is an estimate based on all investor activity for each period, as provided by the Transfer Agent. Final numbers will be determined once an investor-by-investor analysis is performed for the entire NAV restatement period by the Adviser and the Transfer Agent.

(ii) "Loss to Shareholders", which occurred where either (i) the revised mark was higher than the original mark for the period and shareholders who redeemed during the period were underpaid (these shareholders will be made whole as part of the shareholder reprocessing exercise); or (ii) the revised mark was lower than the original mark for the period and shareholders who subscribed or reinvested shares of the Fund overpaid (these shareholders will be made whole as part of the shareholder reprocessing exercise).

(iii) "Estimated Gross Up for Additional Omnibus Accounts", which is intended to estimate the potential impact for the reprocessing of individual capital activity that is currently netted within the Omnibus accounts. The investor level detail within the Omnibus accounts is aggregated into one net investor in the detail available from the Transfer Agent. The current analysis is only looking through to the NFS Omnibus account, but there may be additional omnibus accounts that require this look-through treatment, which will be determined after an analysis of the various omnibus agreements.

(iv) "Processing fees", which refer to the rough amount the Adviser expects to have to pay the Transfer Agent to reprocess shareholder transactions as described above.

(v) "Management fee rebate", which is the excess advisory fee calculated on the higher TerreStar valuation reflected in the NAV.

(vi) "Interest", which is calculated on the daily cumulative Fund receivable at a rate of Fed Funds + 45 bps using the "Actual/360" methodology.

| Components of NAV Error | |
|---|---|
| Total NAV error | 7,442,124 |
| Interest on NAV error | 84,000 |
| Processing Fees | 244,000[1] |
| Management Fee Rebate | 47,000 |
| **Total due to Fund** | **7,817,124** |

**Treatment of the NAV Error and Resolution of Loss**

The GAF NAV Error represents a unique set of circumstances where, during the NAV Restatement period there are days in which there is (1) an original fair value mark, an (2) Updated Valuation (defined below), and (3) the price at which TerreStar was sold in a negotiated arm's length transaction to an unaffiliated third party. The latter price is greater than both the original fair value mark and the Updated Valuation, and results in a Gain above

---

[1] Updated April 1, 2019 using the most recent reprocessing fee estimate available from the Transfer Agent's special events team.

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

Fair Value (defined below) which the Adviser believes should also be considered with respect to any equitable resolution of the error correction. On December 7, 2018, the Fund sold $23 million of TerreStar equity at $350 per share (above its restated December 2018 fair value mark of $274.38, as calculated under the methodology set forth in the consultation, and above the Adviser's original fair value mark of $333.12 prior to the OCA consultation). As addressed below in detail, when applying the fair valuation approach expressed to the SEC Staff during the OCA consult process (the "Updated Valuation") and determining the appropriate resolution under the NAV Error Correction Procedures (as addressed below), the Adviser believes it is equitable and appropriate also to consider a *portion* of the total gain realized on the December 7, 2018 sale in excess of the restated fair value, which total gain was approximately $4,959,992 (the "Gain above Fair Value").

The NAV Error amount of $7.8 million (including interest, rebate of Advisory fees, and processing costs) ignores the actual realized gain represented by the Gain above Fair Value. As a result of the Updated Valuation, the Loss to Fund was caused by "paper" dilution to remaining investors from a lowered NAV per share and real losses resulting from redemptions made at a NAV higher than the Updated Valuation. A significant part of the losses from the redemptions were in a practical sense compensated for by the Gain above Fair Value because the Fund's net assets increased due to the actual cash realized in the December 7, 2018 sale at a price higher than the Updated Value; while not reflected as an offset of the NAV Error in accounting, such sale benefitted remaining investors. The fair value of the remaining TerreStar equity (reflected in the Updated Value), however, was not increased to reflect the full, realized sale price or taken into account when calculating the $7.8 million of loss. Although subject to continuing assessment of valuation inputs, in the absence of negative inputs, applying the valuation methodology set forth in the OCA consult may result in the fair value of remaining TerreStar equity, over time, increasing to a price per share closer or equal to the realized sale price to any extent the weighting of the March Transactions decreases with age. Any such resulting gains would counter the "paper" losses incurred by remaining investors who continue to hold their interest in the Fund.

The NAV Error will be covered by: (i) GAF's pro rata portion of the Adviser's and the Fund's joint insurance policy and $250,000 deductible (paid by the Adviser); (ii) an additional payment and rebate of advisory fees by the Adviser; and (iii) recognizing the effect of the Gain above Fair Value (an approximately $2.3 million portion) in the correction. This later aspect is unique to GAF and arises from a sale of TerreStar equity above fair value after the shareholder approval of the conversion, and results in a write down of the remaining balance of the receivable due to the Fund. A numerical summary is as follows:

|  | Loss to Fund | Loss to Shareholders | Totals |
| --- | --- | --- | --- |
| Net Loss | (6,068,851) | (1,373,272) | (7,442,124) |
| Processing, Fees, Interest | (375,000)[1] | - | (231,000) |
| Insurance Proceeds | 3,566,248 | 1,373,272 | 4,939,520 |
| Insurance Deductible paid by Adviser | 246,976 | - | 246,976 |
| Additional Payment from Adviser | 375,000[1] | - | 231,000 |
| Gain above Fair Value | 2,255,628 | - | 2,255,628 |
| Total* | - | - | - |

*The Total row should net to zero and serves solely as a check figure.

[1] As noted on page 2, processing costs were updated on April 1, 2019 based on the most recent reprocessing fee estimate available from the Transfer Agent's special events team.

Taking into account all relevant data surrounding the TerreStar investment (including the Gain above Fair Value) when applying the NAV Error Correction Procedures is particularly important in light of (i) the robust

3

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

disclosure included in the Fund's definitive proxy statement, which made very clear the risks associated with the ongoing valuation of the TerreStar investment; and (ii) shareholder's overwhelming vote in favor of the Conversion (95% of shareholders present at the shareholder meeting voted in favor of the Conversion proposals). This shareholder affirmation suggests that shareholders chose to continue to seek exposure to the TerreStar investment. The Adviser also believes that these shareholders have invested in the Fund (as well as other funds advised by the Adviser) for these unique and opportunistic investment opportunities that provide investors with access to institutional quality strategies in a 1940 Act offering.

The following granular points were considered with respect to the realized Gain above Fair Value in the application of the NAV Error Correction Procedures:

- On December 7, 2018, and prior to incorporation of the Updated Valuation, TerreStar was marked at $333.12 per share.

- When applying the Updated Valuation to GAF over its NAV Restatement Period, TerreStar's fair value marks were restated to $274.38 per share on December 7, 2018 (different values were determined for various other dates throughout the period).

- This restated value was intended to represent fair value more accurately than the previous TerreStar fair value marks, as set forth in the OCA consultation.

- The delta between $333.12 and $274.38 per share initially resulted in a NAV Error; however, *on the same day* GAF also executed a negotiated arm's length sale of 65,591 shares of TerreStar equity at a price of $350 per share for a total of $23 million.

- If the restated fair value price per share of $274.38 is representative of TerreStar's fair value on December 7, 2018, then a determination of the total impact to shareholders within the parameters of the Fund's NAV Error Correction Procedures (as discussed below) should consider <u>cumulatively</u> the delta between (i) the original mark of $333.12 per share and the revised mark of $274.38 share (red in the chart below) (the "<u>Basis of the NAV Error</u>") *and* (ii) the December 7, 2018 sale price of $350 per share and the revised mark of $274.38, or approximately $4.96 million (green in the chart below) (the Gain above Fair Value).

- While the Basis of the NAV Error (as reflected above under "Calculation of NAV Error") represents both a paper (unrealized) loss on the records of the Fund, the redemptions processed at the higher NAV values were actual (realized) losses to the Fund that were paid out in cash to shareholders; moreover the Gain above Fair Value reflects actual (realized) gains related to the same asset (TerreStar equity).

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)



- As addressed below in further detail, consideration in the resolution of the NAV Error of approximately $2.3 million of the Gain above Fair Value against the Basis of the NAV Error represents the equitable application and inclusion of all relevant data of the TerreStar price in the resolution of Loss to Fund from dilution of remaining investors. As described in above, certain material components of the NAV error were estimated and can be finalized only after an investor-by-investor analysis is performed for the entire NAV restatement period by the Adviser and the Fund's transfer agent. As such, the $2.3 million of the Gain above Fair Value that is proposed to be considered in the resolution of the loss (the "Remaining Liability") against the Basis of the NAV error could change materially, but would be limited to the total Gain above Fair Value of $4.96 million.
- Note, the benefit derived from the Gain above Fair Value compared to the amount of the total Loss to the Fund not covered by insurance inured to the benefit of all GAF shareholders on December 7, 2018 and not a subset of shareholders.
- Any shareholders subscribing into GAF subsequent to December 7, 2018 did not benefit from the Gain above Fair Value, but the approximate $17,000 of subscription proceeds paid in excess of the restated NAV will be made whole from insurance proceeds and the related deductible.
- As noted below under "Applicable Governance Standards in the Error Correction," the Adviser believes that the Gain above Fair Value should be equitably recognized in fairness under the NAV Error Correction Procedures. The analysis takes into account the "paper" dilution referenced above in resolution of the loss because the Fund's net assets increased due to *actual cash* realized in the December 7, 2018 sale at a price *higher* than the Updated Value. This sale benefitted remaining investors, however the fair value of the remaining TerreStar equity (reflected in the Updated Value) was not increased to reflect the full realized sale price.
- The factual circumstances surrounding the valuation of TerreStar equity, including:
    - The use of Houlihan Lokey, an independent third party expert valuation consultant approved by the Board, to assist in the fair valuation;

5

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

- o  The initial conclusion that the sales of TerreStar in March 2018 (the "March Transactions") were "non-orderly", and the ultimate conclusion of the Adviser, after conclusion of a formal audit of affiliated funds holding TerreStar, that the March Transactions should be classified as "orderly"; and
- o  The consultation with the OCA.[2]

**Applicable Governance Standards in the Error Correction**

In order to determine the appropriate handling of the NAV Error, the applicable provisions of the Adviser's NAV Error Correction Procedures, in the context of provisions of the Advisory Agreement, must be considered. Based on the facts and circumstances present, the Adviser believes that the Remaining Liability may be discharged notwithstanding that such discharge decreases current NAV, provided that such discharge is considered to be equitable under application of the NAV Error Correction Procedures in light of all of the circumstances.

The Adviser's NAV Error Correction Procedures

The Fund's NAV Error Correction Procedures are internal procedures of general application and are neither disclosed nor provided to shareholders and therefore are not relied on by investors in connection with their investment in the Fund. While these procedures generally contemplate a determination of a "responsible party" for a NAV error, such a determination is with respect to which party will bear the loss rather than a determination of strict liability, and the procedures expressly contemplate that scenarios may arise where the Adviser, subject to approval of the Board of the Fund, may reach a variety of correction determinations.

The Adviser's process in taking into account the Gain above Fair Value when assessing the NAV Error is consistent with the Fund's NAV Error Correction Procedures in that:

To any extent circumstances are not expressly covered in the procedures (as is the case here), Item 9 of Section II, "Correction Procedures," states the following (emphasis added):

> "9. The foregoing Procedures are designed for general application. However, *there may be situations where equity would suggest a different result under the circumstances*. Accordingly, the Adviser may, with the approval of the Board, diverge from these Procedures, as they deem appropriate, on a case by case basis.

Further and in support of such considerations here, according to Item 4 of Section I, "Definitions," in relevant part, "Fund Loss" includes a situation where a Fund "has paid excessive redemption proceeds as a result of an overstatement of net asset value." Although the definition of Fund Loss is silent on the unique circumstances present here, Item 2 of Section I provides context for analyzing the total harm in its definition of a NAV error:

> "one or more errors in the computation of [NAV] that, *when considered cumulatively*, result in a difference between the originally computed NAV and the corrected NAV of at least $0.01 per share.
> If there are one or more errors in the computation of NAV that, *when considered cumulatively*,

---

[2] As a policy matter, a determination under these circumstances to ignore the Gain above Fair Value would result in an outcome where the Adviser's sale of an asset at a price above fair value results in an increase in Adviser liability due to the sale price not being fully reflected in the fair value of the asset afterwards (i.e., such an outcome would set precedent in effect for the penalization of the Adviser's sale of an asset at a material gain by actually increasing the Adviser's liability). The Adviser believes that its overarching duty of best execution would unfairly then operate to harm the Adviser and create a new potentially disclosable conflict of interest arising from seeking a higher sale price if it would result in increased Adviser liability.

6

result in a difference between the originally computed NAV and the corrected NAV of less than $0.01 per share, the impact is deemed to be immaterial and no corrective adjustment will be made to the Fund or any shareholder account. This computation is based upon the *actual difference* and is not based upon the rounding of NAV to the nearest cent per share." (emphasis added)

To the extent circumstances are not expressly covered, Item 9 as discussed above should govern.

Although the definition of Fund Loss is not a bright line rule in this circumstance, it follows that these two provisions should be taken together and the Adviser should expand the scope of the NAV Error analysis to include all factors when determining the equitable resolution for all parties. This results in the consideration of the Gain above Fair Value to the NAV Error, as discussed below when taking into account the NAV Error Correction Procedures, the Advisory Agreement as discussed below, and overall recompense of shareholders.

As the NAV Error Correction Procedures are designed for general application, the procedures do not, and were not intended to, contemplate or address every possible circumstance or scenario. Given the unique circumstances that produced the Gain above Fair Value (i.e. a period during which there is (1) an original fair value mark, an (2) Updated Valuation (defined below), and (3) the mark at which TerreStar was sold in a negotiated arm's length transaction to an unaffiliated third party), this particular scenario is not explicitly addressed in the general NAV Error Correction Procedures (set forth in Exhibit 1 of the attached NAV Error Correction Procedures).

The language preceding Item 9 in the NAV Error Correction Procedures is expressly designed to address shareholders of the Fund. Item 9, however, includes language that explicitly allows for a "divergence" from those procedures in, presumably, extraordinary circumstances where it is warranted. The Adviser believes the intent of Item 9 was to provide the flexibility needed to consider the unique circumstances described above where all factors should be considered when assessing the total impact to shareholders and the Fund so that an equitable outcome to *all* parties involved can be achieved. Based on this line of reasoning and because the Gain above Fair Value also occurred during the NAV Restatement Period, the Adviser views the Gain above Fair Value as equitable partial compensation for the Fund's losses resulting from the NAV Error. In addition, as discussed below, the Adviser believes this outcome is consistent not only with the equitable application of the NAV Error Correction Procedures but with the standards governing adviser conduct in the Advisory Agreement and general principles of fairness to investors and the Adviser, as well as the Adviser's fiduciary duty of best execution in seeking to and ultimately selling TerreStar at the highest price possible. This approach has been discussed with the Board (see below).

Applicable Advisory Agreement Provisions

To provide additional context for the Adviser's view on the appropriate treatment of the NAV Error, the Adviser believes that it also is appropriate to examine the relationship between the Fund and Adviser under contractual obligations and representations to investors. The standards of the contractual relationship are disclosed to shareholders in the Fund's offering documents and relied upon by shareholders when investing in the Fund. Under the investment advisory agreement between the Fund and the Adviser (the "Advisory Agreement"), the Adviser does not act as a guarantor against all loss arising from error or mistake, but rather is responsible for error or loss arising only from the Adviser's Disabling Conduct, as defined in the Advisory Agreement.

Section 8 of the Advisory Agreement states that "the Adviser shall not be liable for any error of judgment or mistake of law or any loss suffered by the Fund in connection with matters to which the Agreement relates," provided that nothing in the Agreement shall protect the Adviser against liability to the Fund or shareholders to which the Adviser may be subject by reason of Disabling Conduct. Section 6(a) of the Advisory Agreement defines "Disabling Conduct") as (i) willful misfeasance, (ii) bad faith, (iii) gross negligence or (iv) reckless disregard of the duties involved in the conduct of his position".

7

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

The Advisory Agreement also comports with Section 17(i) of the Investment Company Act of 1940, as amended (the "1940 Act"), which states that no contract or agreement can protect an investment adviser against any liability to a fund or shareholders "by reason of willful misconduct, bad faith, or gross negligence, in the performance of his duties, or by reason of reckless disregard of his obligations and duties under such contract or agreement." The Advisory Agreement's standards of liability and indemnification provisions also are consistent with common industry practice for adviser indemnity and liability provisions in advisory agreements of registered funds.

The Advisory Agreement is an exhibit to the Fund's registration statement, and the Fund's Statement of Additional information includes a description of the terms of the Advisory Agreement, including in relevant part:

> "The Investment Advisory Agreements provide that in the absence of willful misfeasance, bad faith or gross negligence in the performance (or reckless disregard) of its obligations or duties thereunder on the part of HCMFA, HCMFA shall not be subject to liability to a Fund for any error of judgment or mistake of law or for any loss suffered by the Fund in connection with the matters to which the Investment Advisory Agreement relates."

**Analysis of the Facts**

Under the NAV Error Correction Procedures (Part II, Section 9), the Adviser, with the approval of the Board, may diverge from such general procedures as they deem appropriate where equity would suggest a different result under the circumstances. As a result of and based on the facts and circumstances present, which have been addressed above, the Adviser believes that the Remaining Liability owed by the Adviser may be discharged notwithstanding that such discharge decreases current NAV. As set forth above, numerous points were considered with respect to the realized Gain above Fair Value, taking into context facts discussed in the OCA consult, the resulting fair valuation and the circumstances of the Adviser's December sale of TerreStar equity.

As noted, the Adviser under the Advisory Agreement does not act as a guarantor against all loss arising from error or mistake, but rather is responsible for error or loss arising only from the Adviser's Disabling Conduct. The Adviser believes that the record supports that it has acted consistently in good faith in the reasonable belief that its actions were in the best interests of the Fund, and have not acted at any point in a manner amounting to Disabling Conduct.[3] In addition, the Adviser's actions should be viewed within its general fiduciary duty under Section 36(a) of the 1940 Act and Section 206 of the Investment Advisers Act of 1940. In this regard the Adviser strongly asserts that it did not engage in personal misconduct, was not grossly negligent, acted in good faith and intent at all times, and in fact sought and received a price on the TerreStar equity sale at a price that significantly exceeded the assessed fair value, to the significant benefit of informed investors who chose to stay in the Fund through the conversion. In such context, the Adviser believes that, upon Board agreement, it is proper under the NAV Error Correction Procedures to acknowledge the Gain above Fair Value in the manner described.

---

[3] Although as noted in the OCA consult process, the Adviser identified a material weakness in the control environment related to assessments of non-observable inputs for certain affiliated funds and the Fund, such matter does not result in the Adviser having failed to act in good faith or in accordance with its duties to the Fund. As noted above, the Adviser does not manage the Fund as a strictly liable party, but rather is responsible for error or loss arising only from its Disabling Conduct. The Adviser believes that its conduct throughout has never reflected willful misfeasance, bad faith, gross negligence or a reckless disregard of its duties. Indeed, it has consistently sought to value TerreStar appropriately, and indeed has, in the form of actual sales reflected by the Gain above Fair Value, achieved sales of TerreStar above the original fair value as well as the fair value resulting from the OCA consult.

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

**Shareholder and Fund Reprocessing**

The NAV Error totals approximately $7.8 million (including interest, rebate of Advisory fees, and processing costs). The NAV Error will be covered by: (i) GAF's pro rata portion of the Adviser's and the Fund's joint insurance policy and $250,000 deductible (paid by the Adviser); (ii) an additional payment and rebate of advisory fees by the Adviser; and (iii) the equitable determinations under the NAV Error Correction Procedures with respect to recognizing the effect of the Gain above Fair Value (an approximately $2.3 million portion) in the correction, which is unique to GAF.

In connection with this analysis, the Adviser has proposed to the Board the following process regarding the GAF NAV Error:

1. Book a receivable for the NAV Error.
2. Apply the insurance proceeds pro rata based on losses across the impacted funds.
3. Adviser to pay the:
   - Ratable share of insurance deductible across the impacted funds; and
   - Management fee rebate, interest and processing costs across the impacted funds.
4. Application of the Gain above Fair Value to the remaining GAF NAV Error as fair and equitable under the NAV Error Correction Procedures, and general principles of equity.

Note: items 1-3 have been completed.

**Accounting Treatment**

The Adviser notes the sale of the TerreStar equity in December 2018 is separate from the revised valuations of the asset that gave rise to the NAV Error and resulting receivable. It is the Adviser's position, however, that the gains from the sale of TerreStar equity simply cannot be ignored in an equitable and comprehensive assessment of total impact to shareholders during a specific accounting period (i.e., the NAV Restatement period).

U.S. generally accepted accounting principles ("GAAP"), however, lacks specific guidance that addresses the proper accounting treatment for striking the daily NAV of a fund where there is (1) an original fair value mark, (2) an Updated Valuation, and (3) a price at which the same asset was sold in a negotiated arm's length transaction to an unaffiliated third party. As such, whatever resolution is ultimately reached regarding the proposal outlined in this memo will dictate the accounting entries to be made in the books and records of the Fund.

If the Remaining Liability is discharged pursuant to Item 9 from Section II of the NAV Correction Procedures, the Adviser notes there is applicable accounting guidance that should be considered. ASC 405-20-40 holds that a liability has been extinguished if "the debtor is legally released from being the primary obligor under the liability, either judicially or by the creditor." In this case, without admission that the Adviser is responsible for the remaining NAV error, the Adviser is the debtor and the Fund is the creditor. The approval of this proposal would remove the liability for payment of this balance. With the extinguishment of the liability, the receivable would no longer be collectible as of the date of the approval.

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

The following accounting entry would be recorded on the records of the Fund in order to extinguish the remaining Receivable due to the NAV Error:

| | |
|---|---|
| Equity of the Fund | $2,255,628 |
| Receivable due to Fund | $2,255,628 |

*To write down the remaining balance of the receivable due to the Fund*

The Adviser views this "write down" as the reduction of a portion of the approximately $5 million of Gain above Fair Value, which has been settled in cash and reflected as an increase in the net assets of the Fund as of the date of the sale. This approach represents an equitable resolution under the NAV Error Correction Procedures and has been discussed with and reviewed by the Fund's counsel, Chief Compliance Officer and Treasurer. Fund counsel believes that the proposed treatment represents an equitable and reasonable resolution under the NAV Error Correction Procedures.

Regarding the appropriate disclosure under GAAP, paragraph 11.67 of the AICPA Guide to the Audit of Investment Companies, "Regulation S-X requires disclosure of more information about transactions with [or related to] affiliates in prospectuses and annual reports to the SEC than is required under GAAP. Various rules of Regulation S-X require the financial statements of an investment company to state separately investments in affiliates, investment income from affiliates, gain or loss on sales of securities of affiliates, and management fees or other service fees payable to controlled entities and other affiliates." Here, the gain on the sale of TerreStar to an unaffiliated third party is a gain on the sale of securities of a portfolio affiliate; as such, the Adviser acknowledges its disclosure obligation in the Fund's 2019 Annual Report.

The proposed treatment of receivable recorded by the Fund would not affect the balances and disclosures in the audited financial statements previously filed for the Fund for the year ended September 30, 2018. If the Remaining Liability is not discharged, a receivable for the same amount will remain on the books and records of the Fund.

**Board Discussions**

The Board agrees in principal with the aforementioned treatment of the NAV error, subject to consultation with and review by the SEC Staff. Although the Adviser has begun shareholder reprocessing with the Fund's transfer agent, the Adviser does not intend to begin issuing payments to shareholders until all SEC Staff comments, if applicable, have been answered.

**Conclusion**

The NAV Error for the Fund totals approximately $7.8 million (including interest, rebate of Advisory fees, and processing costs); the Fund and its shareholders have received $5.2 million and will receive an additional amount of approximately $328,000 from the Adviser (i.e., shareholders who subscribed into the Fund at a price higher than the restated NAV will be made whole). The remaining approximately $2.3 million can appropriately be discharged based on the consideration of all of the circumstances and the equitable authority included in the NAV Error Correction Procedures. This equitable treatment, which includes viewing all data points on an aggregate basis and considering the totality of the circumstances, is permitted under the Fund's NAV Error Correction Procedures and aligns with the Adviser's contractual duties to the Fund.

Confidential Treatment Requested by Highland Global Allocation Fund
Pursuant to 17 C.F.R. § 200.83 (2019)

## **EXHIBIT A**

## **NAV Error Correction Procedures**