PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com
-and-

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:   MHayward@HaywardFirm.com
         ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § § | |
| Plaintiff, | § § | Adv. Proc. No. 21-3004 |
| vs. | § § | |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., | § § § § | Case No. 3:21-cv-00881-X |
| Defendant. | § § § | |

# **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT .......................................................................................... 1

II. ARGUMENT ..................................................................................................................... 3

   A. Highland is Entitled to Summary Judgment on HCMFA's
      Breach of the Notes....................................................................................................... 3

   B. HCMFA Fails to Rebut Highland's Prima Facie Case for Summary Judgment ................ 4

      i. No Reasonable Jury Could Find the HCMFA Notes Were a "Mistake"............. 5

      ii. There is No Genuine Issue of Material Fact that Highland
         Gave Consideration in Exchange for the Notes.................................................. 12

      iii. There is No Genuine Issue of Material Fact that Mr. Waterhouse
         had Authority to Sign the Notes........................................................................ 14

      iv. There is No Genuine Issue of Material Fact that HCMFA is
         the Maker of the Notes...................................................................................... 17

      v. HCMFA Should Be Estopped From Avoiding Liability on the Notes.............. 22

III. CONCLUSION................................................................................................................ 24

# TABLE OF AUTHORITIES

## CASES

*Al Asher & Sons, Inc. v. Foreman Elec. Serv. Co., Inc.*,
  MO:19-CV-173-DC, 2021 WL 2772808 (W.D. Tex. Apr. 28, 2021) ................................. 6, 10

*Alton v. Texas A&M University*,
  168 F.3d 196 (5th Cir. 1999) ................................................................................................. 5

*AXA Art Americas Corporation v. Public Storage*,
  208 F.Supp.3d 820 (S.D.Tex. 2016) .................................................................................... 19

*BCC Merchant Solutions, Inc. v. Jet Pay, LLC*,
  129 F.Supp.3d 440 (N.D.Tex. 2015) .............................................................................. 18, 19

*BMG Music v. Martinez,*
  74 F.3d 87 (5th Cir.1996) ...................................................................................................... 6

*BMO Harris Bank NA v. RidgeAire, Inc.*,
  No. 6:12-cv-550, 2013 WL 12151486 (E.D.Tex. Sept. 30, 2013) .................................. 13, 21

City of Alexandria v. Brown,
  740 F.3d 339 (5th Cir. 2014) ............................................................................................... 17

*Clark v. America's Favorite Chicken Co.*,
  110 F.3d 295 (5th Cir. 1997) ............................................................................................... 10

*Commercial Capital Holding Corp. v. Team Ace Joint Venture*,
  No. CIV. A. 99-3040, 2000 WL 726880 (E.D.La. June 2, 2000)...................................... 14, 16

*Davis v. Bank of America, N.A.*,
  No. H–13–1306, 2014 WL 1401677 (S.D.Tex. Apr. 10, 2014) ........................................ 15, 16

*DIRECTV, Inc. v. Budden*,
  420 F.3d 521 (5th Cir. 2005) ................................................................................................. 7

*Eason v. Thaler*,
  73 F.3d 1322 (5th Cir. 1996 ................................................................................................. 11

*Epps v. NCNB Texas Nat. Bank*,
  838 F. Supp. 296 (N.D. Tex.) .............................................................................................. 20

*Epps v. NCNB Texas*,
  7 F.3d 44 (5th Cir. 1993) ..................................................................................................... 20

*Haygood v. De Escabedo*,
  356 S.W.3d 390 (Tex. 2011)................................................................................................ 10

*In re Hinsley*,
  201 F.3d 638 (5th Cir. 2000) ................................................................................................. 7

*In re Magna Cum Latte, Inc.*,
  07-31814, 2007 WL 3231633 (Bankr. S.D. Tex. Oct. 30, 2007) ........................................... 5

*Instone Travel Tech Marine & Offshore v. Int'l Partners, Inc.*,
  334 F.3d 423 (5th Cir. 2003) ........................................................................... 19

*Kariuki v. Tarango*,
  709 F.3d 495 (5th Cir. 2013) .............................................................................. 6

*Latimer v. Smithkline & French Laboratories*,
  919 F.2d 301 (5th Cir.1990) ............................................................................... 5

*Lavergne v. Jefferson County, Tex.*,
  164 F.R.D. 441 (E.D. Tex. 1995) .................................................................. 7, 13

*Lockwood International, Inc. v. Wells Fargo Bank, N.A.*,
  459 F.Supp.3d 827 (S.D.Tex. 2020) ................................................................. 23

*Looney v. Irvine Sensors Corp.*,
  CIV.A.309-CV-0840-G, 2010 WL 532431 (N.D. Tex. Feb. 15, 2010) ........... 4, 6, 9

*Lowery v. Bank of Am., N.A.*,
  04-12-00729-CV, 2013 WL 5762227 (Tex. App. Oct. 23, 2013) ...................... 16

*Main Street Bank v. Unisen, Inc.*,
  No. H-06-3776, 2008 WL 11483415 (S.D.Tex. Feb. 15, 2008) .................. passim

*Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*,
  817 F.3d 241 (5th Cir. 2016) ...................................................................... 22, 23

*Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*,
  40 F.3d 698 (5th Cir. 1994) ................................................................................ 5

*Polland & Cook v. Lehmann*,
  832 S.W.2d 729 (Tex. App. 1992) .............................................................. 14, 15

*Pryor v. Everhome Mortg. Co.*,
  No. 3:13–CV–2963–D, 2014 WL 5802716 (N.D.Tex. Nov. 7, 2014) ................. 17

*Resolution Tr. Corp. v. Starkey*,
  41 F.3d 1018 (5th Cir. 1995) .............................................................................. 4

*Salama v. Western Wind Energy Corp.*,
  2013 WL 6079548 No. 4:12–cv–03535 (S.D.Tex. Nov. 19, 2013) .......... 11, 12, 13

*Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*,
  438 Fed. Appx. 343 (5th Cir. 2011) .................................................................... 7

*Savitch v. Southwestern Bell Yellow Pages, Inc.*,
  2-04-257-cv, 2005, Tex. App. LEXIS 6215
  (Tex. App.—Fort Worth Aug. 4, 2005) .............................................................. 21

*Scott v. Harris*,
  550 U.S. 372 (2007) ......................................................................................... 11

*Smith v. Stericycle, Inc.*,
  538 F.Supp.2d 960 (W.D.Tex. 2008) ........................................................... 22, 23

*Stable Energy, L.P. v. Newberry*,
  999 S.W.2d 538 (Tex. App. 1999) .................................................................... 24

*Suttles v. Thomas Bearden Co.*,
 152 S.W.3d 607 (Tex. App. 2004)..................................................................................... 13, 21

*Tiede v. Salazar*,
 518 F. Supp. 3d 955 (W.D. Tex. 2021) ................................................................................. 17

*Tyler v. Cedar Hill Independent Sch. Dist.*,
 426 Fed.Appx. 306 (5th Cit. 2011)........................................................................................ 7

*United States v. Lawrence*,
 276 F.3d 193 (5th Cir. 2001) ................................................................................................. 6

*United States v. Succession of Siddon*,
 812 F. Supp. 674 (W.D. La. 1993) ....................................................................................... 17

*Vega v. Tyson Foods, Inc.*,
 525 F.Supp.3d 759, (N.D.Tex. 2021) .................................................................................... 13

*Watkins v. Petro-Search, Inc.*,
 689 F.2d 537 (5th Cir. 1982) .......................................................................................... 18, 20

*Whitney Nat. Bank v. Medical Plaza Surgical Center L.L.P.*,
 No. H-06-1492, 2007 WL 3145798 (S.D.Tex. Oct. 27. 2007)............................................. 6, 9

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Highland Capital Management, L.P., the reorganized debtor and the plaintiff in the above-captioned adversary proceeding ("Highland" or "Plaintiff"), hereby files this reply (the "Reply") in support of its *Motion for Partial Summary Judgment in Note Actions* [Docket No. 91] (the "Motion") on its First and Second Causes of Action.  In support of its Motion, Highland states as follows:

## I.    PRELIMINARY STATEMENT[1]

1.      HCMFA cannot rebut Highland's *prima facie* case for summary judgment. The unrefuted evidence proves (i) the existence of the HCMFA Notes, (ii) in favor of Highland, and (iii) that there is a balance currently due and owing thereunder.   There is no genuine dispute of material fact as to any element of Highland's case.

2.      Nevertheless, in its Response, HCMFA attempts to fabricate factual disputes by vaguely asserting that the Notes are a result of Mutual Mistake and should have been treated as "compensation."  HCMFA also attempts to inject ambiguity into the record by arguing that the Notes are somehow unenforceable because they lack "consideration," are "ambiguous" as to whether HCMFA is a "maker," and were executed without "authority."  HCMFA offers no evidence in support of its Affirmative Defenses, other than scraps of Mr. Waterhouse's conclusory and speculative testimony, and an unsubstantiated, self-serving affidavit by Mr. Dondero.   Such conclusory, self-serving affidavits, without more, are insufficient to defeat summary judgment in the face of the admissible, probative, contrary and overwhelming evidence

---

[1] Capitalized terms in this Preliminary Statement shall have the meanings ascribed to them below.

in the record.  At best, HCMFA's assertions constitute a mere "scintilla" of bald claims which are insufficient to defeat summary judgment.

3.    HCMFA's Mutual Mistake defense fails as a matter of law.  There is no evidence showing that Highland and HCMFA both intended to treat the HCMFA Notes as "compensation."  The undisputed evidence shows the exact opposite.  Both Highland and HCMFA treated the Notes as loans.  At all relevant times, the HCMFA Notes were (i) disclosed as HCMFA's liabilities to third parties, (ii) treated as liabilities in HCMFA's audited financial statements and balance sheets (prepared based on management representation letters signed by Mr. Dondero and Mr. Waterhouse), and (iii) treated as assets in Highland's audited financial statements, balance sheets, books and records, and Bankruptcy Court filings.  Mr. Waterhouse, HCMFA's Treasurer and the individual whose name appears on the Notes, affirmatively stated during an investigation regarding the genesis of the Notes that the Notes were purposely papered as loans.  The Mutual Mistake defense constitutes a fabricated story that is directly contradicted by all documentary evidence.  No reasonable jury could believe it.

4.    HCMFA's assertion that the Notes are unenforceable for "lack of consideration" is equally meritless.  This defense is premised on the same conclusory assertions underlying the Mutual Mistake defense.  The unrefuted documentary evidence establishes that Highland contemporaneously transferred funds equal to the face amount of the Notes to HCMFA in the form of loans in exchange for the Notes.  HCMFA's bare assertions regarding consideration fail to create a genuine dispute of material fact for trial.

5.    HCMFA also attempts to inject ambiguity into the record by arguing that it is unclear whether HCMFA is the "maker" of the Notes.  The Notes, as a matter of law, are unambiguous.  In light of the undisputed factual circumstances surrounding the unambiguous

Notes and their plain terms, there can be no credible issue of fact that HCMFA is the maker of the Notes. HCMFA's argument that the Notes are unenforceable on the ground that Mr. Waterhouse did not have "authority" to bind HCMFA is also entirely unsupported. Based on the undisputed documentary evidence, Mr. Waterhouse, the Treasurer of HCMFA managing HCMFA's accounting and finance, had authority to execute the Notes.

6. In addition to failing to offer any credible evidence in support of its Affirmative Defenses, HCMFA should be, as a matter of law, estopped from escaping liability under the Notes. HCMFA has acknowledged the Notes for over two-and-a-half years through its actions in the Bankruptcy Case, its representations to the Retail Board, and its own financial documents. After such blatant, extensive, and uninterrupted ratification, HCMFA should not now be able to avoid liability under the Notes. Any such result would be unconscionable.

7. HCMFA fails to create any genuine dispute of material fact regarding its Affirmative Defenses. In light of the complete absence of evidence in support of HCMFA, and the overwhelming probative evidence in support of Highland, no reasonable jury could return a verdict in favor of HCMFA.

8. Highland is entitled to summary judgment for HCMFA's breach of the Notes.

## II. ARGUMENT

### A. Highland is Entitled to Summary Judgment on HCMFA's Breach of the Notes

9. Highland has established its *prima facie* case that it is entitled to summary judgment on HCMFA's breach of the Demand Notes. It establishes (i) the Notes in question; (ii) signed by HCMFA; (iii) that Highland was the legal owner and holder thereof, and (iv) that a certain balance is currently due and owing on the Notes. *See* Motion ¶¶ 20, 135 (citing to Klos

Dec. ¶¶ 21-22); *Park Cities Bank v. Lee*, 3:10-CV-1584-K, 2012 WL 833189, at *2 (N.D. Tex.

Mar. 12, 2012) (plaintiff has "established that there is no genuine issue of material fact regarding

its claim for recovery on a promissory note" where it established "the note in question, that the

defendant signed it, that the plaintiff was the legal owner and holder thereof, and that a certain

balance is due and owing on the note"); *Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th

Cir. 1995) (holding that where affidavit "describes the date of execution, maker, payee, principal

amount, balance due, amount of accrued interest owed, and the date of default for each of the two

promissory notes," movant "presented a prima facie case of default on the notes"); *Looney v.

Irvine Sensors Corp.*, CIV.A.309-CV-0840-G, 2010 WL 532431, at *2-3 (N.D. Tex. Feb. 15,

2010) (where movant "has attached a copy of the note … to a sworn affidavit in which he states

that the photocopy is a true and correct copy of the note, that he is the owner and holder of the

note, and that there is a balance due on the note … [movant] has made a prima facie case that he

is entitled to summary judgment on the note").

**B.**    **HCMFA Fails to Rebut Highland's *Prima Facie* Case for Summary
Judgment**

10.    HCMFA fails to rebut Highland's *prima facie* case for summary judgment

because it fails to meet its burden of showing the "existence of a genuine issue of a material fact

for trial." *See Park Cities*, 2012 WL 833189, at *3.  There is no material dispute that (i) HCMFA

executed, through its treasurer, Mr. Waterhouse, the Notes in favor of Highland; (ii) there is an

outstanding balance on the Notes; and (iii) a demand for payment has been made on HCMFA and

refused.

11.    In an attempt to rebut Highland's *prima facie* case for summary judgment,

HCMFA argues that (i) the HCMFA Notes were a result of "Mutual Mistake," (ii) there was no

consideration exchanged for the Notes, (iii) Mr. Waterhouse did not have authority to sign the

Notes, and (iv) the Notes are "ambiguous" (collectively, the "Affirmative Defenses"). HCMFA fails to come forward with any credible evidence sufficient to create a "genuine" dispute of material fact for trial. *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994) (to defeat a *prima facie* case for summary judgment, the nonmovant "must come forward with evidence to support the essential elements of its claim on which it bears the burden of proof at trial."); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999) (a dispute about a material fact is "genuine" only where "the evidence is such that a *reasonable jury* could return a verdict in favor of the nonmoving party."); *Latimer v. Smithkline & French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990) (there is no "genuine" issue for trial where there is an "absence of evidence supporting the nonmoving party's case." ); *In re Magna Cum Latte, Inc.*, 07-31814, 2007 WL 3231633, at *3 (Bankr. S.D. Tex. Oct. 30, 2007) ("A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact").

      i.      **No Reasonable Jury Could Find the HCMFA Noted Were a "Mistake"**

12.     HCMFA's Mutual Mistake defense fails as a matter of law. HCMFA fails to adduce any evidence showing that HCMFA and Highland had a common intention in executing the Notes and that the Notes do not reflect such intention due to a "shared mistake."

13.     In support of its Mutual Mistake defense, HCMFA argues that the "common mistake" between HCMFA and Highland was that "the Transfers constituted loans rather than compensation." Response ¶ 65. HCMFA specifically argues that the Notes were the result of a "mutual mistake" because (i) "Mr. Dondero intended the Transfers to compensate HCMFA for the NAV Error, not to be repaid as loans, (ii) Mr. Dondero, the only person with the authority to character the Transfers as loans, never gave that instruction," (iii) Highland "initially

lacked sufficient funds to make the Transfers," (iv) Mr. Dondero personally advanced the funds to Highland, and (v) the amounts of the two Transfers substantially mirrored the amounts of the prior two transfers HCMFA made to the Fund on account of the NAV error." Response ¶ 63. Such conclusory assertions, even if credited, are legally insufficient to constitute the defense of "mutual mistake."

14. As briefed in the Motion, "mutual mistake" nullifies an agreement only where both parties to the agreement have a "common intention," but the written agreement incorrectly reflects that common intention due to a mutual mistake. *See Whitney Nat. Bank v. Med. Plaza Surgical Center L.L.P.*, No. H-06-1492, 2007 WL 3145798, at *6 (S.D.Tex. Oct. 27. 2007) (citing Texas law); *Looney*, 2010 WL 532431, at *5 (for "mutual mistake" to nullify a promissory note, the evidence must show that "both parties to the note were acting under the same misunderstanding of the same material fact"); *Al Asher & Sons, Inc. v. Foreman Elec. Serv. Co., Inc.*, MO:19-CV-173-DC, 2021 WL 2772808, at *9 (W.D. Tex. Apr. 28, 2021) ("When mutual mistake is alleged, the party seeking relief must show what the parties' true agreement was and that the instrument incorrectly reflects that agreement because of a mutual mistake").

15. HCMFA fails to present any evidence in support of its Mutual Mistake defense, other than the conclusory, self-serving affidavit of Mr. Dondero attached to the Response. *See* Response ¶ 66 (citing to Dondero affidavit at HCMFA Appx. 1-5). Such "self-serving allegations" are not the type of significant "probative evidence required" to defeat summary judgment, especially "in the face of conflicting probative evidence." *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013); *see also BMG Music v. Martinez,* 74 F.3d 87, 91 (5th Cir.1996) (affirming for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant"); *United States v. Lawrence*, 276

F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for recovery of promissory note, where defendant's only evidence to rebut plaintiff's *prima facie* case consisted of "self-serving allegations," which "are not the type of significant probative evidence required to defeat summary judgment" (internal quotation marks and citation omitted)); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005) (affirming summary judgment where defendant's "attempt to create a fact issue … by relying on a conclusory and self-serving affidavit is on unsteady ground"); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) (affirming summary judgment, and finding that "party's self-serving and unsupported" affidavit regarding her "intent" is "not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud."); *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed.Appx. 306, 309 (5th Cir. 2011) (affirming summary judgment, where "[a]fter closely reviewing the record … the only document [party] provides to support her claim" is her conclusory, self-serving affidavit, noting "[w]e have repeatedly held that self-serving affidavits, without more, will not defeat a motion for summary judgment."); *Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*, 438 Fed. Appx. 343, 346–47 (5th Cir. 2011) (affirming summary judgment where party attempting to rebut summary judgment relies on "her own self-serving affidavit," noting "a self-serving affidavit, without more evidence, will not defeat summary judgment"); *Lavergne v. Jefferson County, Tex.*, 164 F.R.D. 441, 443 (E.D. Tex. 1995) ("When an affidavit in response to a summary judgment motion contains "nothing more than a recital of unsupported allegations, conclusory in nature," the motion for summary judgment should be granted").

16. By contrast, the undisputed documentary evidence overwhelmingly demonstrates that Highland and HCMFA both intended the Notes to be treated as loans: (i) Mr. Waterhouse, HCMFA's Treasurer, knew the money Highland transferred to HCMFA in exchange

for the Notes was being treated as an "intercompany loan," (Ex. 194 at 111:6-112:7, Appx. 3154; Ex. 54, Appx. 870-873; Ex. 56, Appx. 876-877); (ii) the Notes have always been recorded as liabilities in HCMFA's audited financial statements and balance sheets, (Ex. 45 at 17; Ex. 192 at 49:19-50:2, 54:6-9, 54:22-55:8, 55:23-56:3, 56:20-59-3, Appx. 3026-3029); (iii) the Notes were reflected as assets in Highland's books and records, audited financial statements, and bankruptcy filings, (Ex. 34 at 39, Appx. 782); and (iv) HCMFA represented the Notes as "liabilities" to third parties (Ex. 59 at 2, Appx. 885). Highland's audited financial statements, which reflect the existence of the Notes, expressly rely upon the management representation letters signed by both Mr. Dondero and Mr. Waterhouse, HCMFA's President and Treasurer. (*See* Ex. 33, Appx. 729-740) (Mr. Dondero and Mr. Waterhouse representing to PwC that all "subsequent events" were disclosed); (Ex. 34 at 38-39, Appx. 781-782) (Note 15 to Highland's 2018 audited financial statement disclosing HCMFA Notes as "subsequent events," stating that "over the course of 2019, through the report date, HCMFA issued promissory notes to [Highland] in the aggregate amount of 7.4 million").

17. HCMFA's Mutual Mistake defense is further undermined by HCMFA's own internal investigation into the genesis of the Notes. After the Adversary Proceeding was commenced, HCMFA purportedly launched an internal "investigation to understand the origin of the" HCMFA Notes. Dennis Sauter, an attorney and NexPoint's general counsel who also does work for Mr. Dondero's other affiliates, led the investigation. (Ex. 193 at 6:3-16, 7:10-13, Appx. 3086, 12:10-13:3, Appx. 3087, 24:18-25:12, Appx. 3090). Despite having no personal knowledge of any of the underlying facts, Mr. Sauter told Mr. Waterhouse that he made a mistake by signing the HCMFA Notes and had no authority to do so. Mr. Waterhouse "obviously disagreed" that any mistake was made, telling Mr. Sauter that "we transferred the money, so I executed the notes.

HCMFA didn't have the money to pay GAF, and so we transferred it from HCMLP and I executed the notes." Mr. Waterhouse *never* admitted to making a mistake. *Id*. at 52:15-59:16, Appx. 3097-3099. Indeed, Mr. Waterhouse bluntly told Mr. Sauter about the purpose of the HCMFA Notes:

> Q:     So did Mr. Waterhouse tell you that he prepared the notes for some internal accounting or other purpose?
>
> A:     Yes.
>
> Q:     And did he tell you what the purpose of the notes was?
>
> A:     Yes. He said if he transferred money he had to have a note to go with it.

*Id*. at 61:7-24, Appx. 3099; *see also id*. at 56:8-23, Appx. 3098 (Mr. Waterhouse could not describe "any process. He said the money was transferred, and so we signed the notes"), 71:4-20, Appx. 3102 (Mr. Waterhouse told Mr. Sauter that he needed a note for HCMFA's auditors to "document the transfer of funds"). Thus, HCMFA's own findings regarding the origin of the Notes demonstrate that the Notes were "loans," and not, in any way, shape, or form, the result of a "mistake."

18.     The Mutual Mistake defense, therefore, fails as a matter of law. *Whitney*, 2007 WL 3145798, at *6 (finding mutual mistake defense "fails as a matter of law" where assertions were "insufficient to raise a fact issue as to mutual mistake of fact regarding written agreement where plaintiff "has presented competent evidence" of its own intention regarding the agreement, "there is no evidence that [plaintiff] had the intent that these defendants assert," "no document suggests any such intent," and where "the documents are clear" on their face); *Looney*, 2010 WL 532431, at *5 (granting summary judgment in favor of plaintiff for breach of note as a matter of law on "mutual mistake" defense where defendant "does not cite any record evidence in support of its claim that [parties] were operating under a shared mistake when they executed the note"); *Hitachi,* 2007 WL 2752692, at *6 (finding "mutual mistake" defense fails as a matter

of law where "there is no evidence that a *mutual mistake* was made in the [agreement,]" and where "the fact that [defendant] did not discover the 'mistake' until well after the [] agreements were signed undermines" the mutual mistake defense) (emphasis in original); *Al Asher & Sons*, 2021 WL 2772808, at *9 (finding that defendant failed to carry its burden to establish there is a genuine issue of material fact as to mutual mistake under an agreement, noting that "mutual mistake" defense is inapplicable as a matter of law, because, even if [defendant's] assumption regarding the [] contract is a mistake of fact, there is no evidence in the record that Plaintiff and [defendant] mutually held the mistake … ").

19.     Mr. Waterhouse's speculative testimony that, in the event he is "personally liable" under the Notes, then the Notes would be a mistake, *see* Response ¶ 66, is equally insufficient to demonstrate a defense of "mutual mistake." *See Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment").

20.     HCMFA's reference to the "collateral source" rule is also entirely irrelevant here. *See* Response ¶ 67 (arguing that such rule "precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff from someone else," and therefore, "the fact that HCMFA received insurance proceeds" for the NAV Error would not have precluded it from also receiving proceeds from Highland as compensation, rule) (citing to *Haygood v. De Escabedo*, 356 S.W.3d 390, 394–95 (Tex. 2011)).  The collateral source rule applies to a "tortfeasor's liability."  Here, Highland was never held liable as a tortfeasor for the NAV Error, and therefore, this rule does not even apply.  The fact that HCMFA would have, theoretically, been able to receive a double recovery from a tortfeasor and insurance does not,

alone, create a genuine issue of fact supporting HCMFA's Mutual Mistake defense. For these same reasons, HCMFA's assertion that "it doesn't matter" whether Highland was "liable to HCMFA for the NAV Error" since "both [Highland] and HCMFA … believed this to be the case," should be summarily rejected. Again, there is no credible evidence supporting the notion that either Highland *or* HCMFA believed Highland was liable to HCMFA for the NAV Error, or that the loans in exchange for the HCMFA Notes should have been treated as "compensation."

21. HCMFA's Mutual Mistake defense constitutes a fabricated story blatantly contradicted by the record. HCMFA's conclusory assertions in support of such a story are insufficient to defeat Highland's *prima facie* case for summary judgment. *See Salama v. W. Wind Energy Corp.*, 2013 WL 6079548, at *5, No. 4:12–cv–03535 (S.D.Tex. Nov. 19, 2013) ("As the Supreme Court has noted, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment'") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment); *Main Street Bank v. Unisen, Inc.*, No. H-06-3776, 2008 WL 11483415, at *7 (S.D.Tex. Feb. 15, 2008) ("The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment"). HCMFA has failed to set forth any facts sufficient to lead a "reasonable jury" to find that the Notes were a result of "mutual mistake."

22. Accordingly, Highland is entitled to summary judgment on HCMFA's Mutual Mistake defense.

ii.    **There Is No Genuine Issue of Material Fact that Highland Gave Consideration in Exchange for the Notes**

23.    HCMFA also fails to raise a genuine issue of material fact regarding whether Highland gave consideration in exchange for the Notes.

24.    The defense of failure of consideration defeats summary judgment only if the nonmovant "alleges facts and presents evidence that the consideration in the agreement as not received." *Salama*, 2013 WL 6079548, at *6 (internal quotations omitted); *Main Street Bank*, 2008 WL 11483415, at *7 (same).

25.    HCMFA presents no evidence in support of its contention that there was no consideration for the Notes.   Instead, HCMFA's argument that the Notes are "unenforceable for lack of consideration" is premised on the same conclusory arguments underlying the Mutual Mistake defense. *See* Response ¶ 69 (stating that Highland "did not give anything in exchange for the Notes" since the Transfers were "compensation for the NAV Error.")

26.    Contrary to HCMFA's unsubstantiated assertions, the documentary evidence in the record demonstrably establishes that Highland gave consideration to HCMFA in the form of loans in exchange for the Notes.  *See* May 2 and May 3, 2019 Bank Statements (Ex. 147 at 7, Appx. 2526) (showing transfers of funds to HCMFA on May 2 and May 3, 2019 in amounts equal to face value of the Notes); Notes (Ex. 1 (Exhibit 1), Appx. 9-11) (stating HCMFA will pay Highland certain sums "FOR VALUE RECEIVED"); Klos Dec. ¶¶ 21-22; Emails to Corporate Accounting (Ex. 54, Appx. 870-873; Ex. 56, Appx. 876-877) (stating to "send $2,400 (sic) from HCMLP to HCMFA" as a "new interco loan" and "set up a wire from HCMLP to HCMFA for $5M as a new loan"); DC Sauter Deposition Transcript (Ex. 193 at 56:8-23, Appx. 3093) (Mr. Waterhouse telling Mr. Sauter "the money was transferred, and so we signed the notes").

27.     There is, therefore, no genuine question of material fact regarding whether Highland gave consideration in exchange for the Notes. *See Salama*, 2013 WL 6079548, at *8-9 (granting summary judgment to enforce agreement and rejecting party's argument that there was "failure of consideration" where "there is quite a lot of evidence in the record" supporting consideration, "and "none at all" in support of lack of consideration defense, besides his self-serving and conclusory statement in the affidavit attached to his opposition to this motion," holding there was "no question of fact on that issue"); *BMO Harris Bank NA v. RidgeAire, Inc.*, No. 6:12-cv-550, 2013 WL 12151486, at * (E.D.Tex. Sept. 30, 2013) (finding that defendants have failed to raise a genuine issue of material fact regarding failure of consideration defense where "Defendants allege lack of consideration, but provide no evidence whatsoever to support that claim"); *Main Street Bank*, 2008 WL 11483415, at *7 (finding defendant "fails to establish a genuine issue of material fact that the Agreements fail of consideration where, inter alia, "the Agreements included language stating that [plaintiff] would provide" such consideration, noting "[c]onclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint"); *Suttles v. Thomas Bearden Co.*, 152 S.W.3d 607, 616 (Tex. App. 2004) (finding a defendant failed to raise a genuine issue of material fact regarding failure of consideration defense because the evidence established defendant received the value of plaintiff's loan, regardless of the source of the funds); *Vega v. Tyson Foods, Inc.*, 525 F.Supp.3d 759, (N.D.Tex. 2021) (finding party's "unsupported and conclusory evidence … is not sufficient to raise a genuine dispute of material fact" based on lack of consideration.); *Lavergne*, 164 F.R.D. at 443 (finding opponent's response "exactly the sort of response …

insufficient to defeat summary judgment," where the affidavit is "conclusory" and "points to no specific facts concerning" allegations).

28.     Accordingly, Highland is entitled to summary judgment on HCMFA's Affirmative Defense of failure of consideration.

### iii.     There is No Genuine Issue of Material Fact that Mr. Waterhouse Had Authority to Sign the Notes

29.     HCMFA also attempts to create a question of fact by maintaining that Mr. Waterhouse did not have "authority" to bind HCMFA to the Notes. *See* Response ¶¶ 51-57. This conclusory assertion is refuted by the record and is, as a matter of law, without merit.

30.     There can be no credible dispute regarding Mr. Waterhouse's authority to execute the Notes on behalf of HCMFA. "The term 'actual authority' denotes that authority that a principal intentionally confers upon an agent or intentionally allows the agent to believe himself to possess." *Polland & Cook v. Lehmann*, 832 S.W.2d 729, 738 (Tex. App. 1992). Apparent authority arises when the "principal has acted in a manner that manifests the alleged agent's authority and whether the third party reasonably relied on the agent's authority." *Commercial Capital Holding Corp. v. Team Ace Joint Venture*, No. CIV. A. 99-3040, 2000 WL 726880, at *5 (E.D.La. June 2, 2000). The undisputed evidence establishes that Mr. Waterhouse had both actual and apparent authority to sign the Notes.

31.     At the time Mr. Waterhouse executed the Notes on behalf of HCMFA, Mr. Waterhouse was the Treasurer of HCMFA. *See* Incumbency Certificate (Ex. 35, Appx. 789). As Treasurer, he was authorized to, *inter alia*, "execute any and all agreements on behalf of the General Partner [of HCMFA] in its capacity as the general partner of [HCMFA]." *Id.* In this role, Mr. Waterhouse managed the accounting and finance for HCMFA. (Ex. 105 at 25:22-26:3, Appx. 2055-2056). Mr. Waterhouse testified that he "signed a lot of documents in [his] capacity" as

Treasurer, and believed he was authorized to sign the HCMFA Notes. *Id.* at 143:24-25, Appx. 2085. To Mr. Waterhouse, the Notes were "just another document." *Id.* at 144:2-3, Appx. 2085. No one at HCMFA ever told Mr. Waterhouse that, as the Treasurer of HCMFA, he did not possess such authority. *Id.* at 158:2-16, Appx. 2089. At the time he signed the Notes on behalf of HCMFA, Mr. Waterhouse had no reason to believe he was not authorized to do so. *Id.* at 160:23-161:2, Appx. 2089. In fact, Mr. Waterhouse would not have signed the Notes on behalf of HCMFA if he did not believe he possessed such authority. *Id.* at 144:4-20, Appx. 2085. The Incumbency Certificate, which named Mr. Waterhouse as the Treasurer of HCMFA, gave Mr. Waterhouse "comfort" that he was authorized to sign the Notes. *Id.* at 159:13-160:4, Appx. 2089. HCMFA's own findings regarding the origin of the Notes further support Mr. Waterhouse's authority to bind HCMFA. As noted *supra* ¶ 17, Mr. Waterhouse affirmatively stated to Mr. Sauter that "money was transferred, and so we signed the notes."

32. Mr. Waterhouse's authority to execute agreements on behalf of HCMFA in his capacity as an officer is further corroborated by the fact that he signed other similar intercompany agreements on behalf of Dondero affiliates. *See* Ex. 3 (Exhibits 3 and 4), Appx. 123-128 (Mr. Waterhouse, as officer of HCMS, executing HCMS Notes on behalf of HCMS); Ex. 205, Appx. 4162-4181 (Mr. Waterhouse signing NexPoint's Shared Services Agreement on behalf of NexPoint in his capacity as "Treasurer").

33. There can be no genuine dispute for a jury regarding Mr. Waterhouse's authority to execute the Notes on behalf of HCMFA. *See Davis v. Bank of Am., N.A.*, No. H–13–1306, 2014 WL 1401677, at *3 (S.D.Tex. Apr. 10, 2014) (finding lack of actual authority defense is refuted by record where "the plain language of the" instrument establishes agent's authority); *Polland*, 832 S.W.2d at 738 (agent had actual authority where agent's acts were "within the scope

of his" express authority and were "related to matters over which such authority extends"); *Commercial Capital*, 2000 WL 726880, at *5 (finding "the evidence presented clearly shows that [agents] were vested with apparent authority" to represent that invoices would be paid by company where agents held title of project manager, generally approved invoices and checks, and where principal gave third party "a reasonable belief that [agents] had authority to act on behalf of [principal]," who relied on such representations in entering into transaction).

34.     HCMFA's assertion that Mr. Waterhouse "does not believe he possessed authority" since "he testified that only Mr. Dondero could authorize borrowing at the level in question," Response ¶ 53 (citing Ex. 105 at 270:18-273:9, Appx. 2117), misrepresents the context of Mr. Waterhouse's testimony.   Mr. Waterhouse testified that in order to cause HCMFA to become the borrower of the Notes, he would have had to get approval from Mr. Dondero.  *See id.* at 272:19-24, Appx. 2117.  At no point did Mr. Waterhouse testify that he did not have such approval, or that, as HCMFA suggests, that he did not believe he possessed authority to execute the Notes.  As discussed *supra*, Mr. Waterhouse had authority to bind HCMFA to the Notes, and no one from HCMFA ever told him otherwise.

35.     HCMFA also cites to Mr. Dondero's self-serving affidavit for the conclusory assertion that Mr. Dondero is "not aware of any corporate documents that would confer such authorization." Response ¶ 53 (citing Dondero's affidavit at HCMFA Appx. 1).  Such a scintilla of evidence is not the type sufficient to create a genuine issue of fact regarding Mr. Waterhouse's authority to sign the HCMFA Notes. *See Lowery v. Bank of Am., N.A.*, 04-12-00729-CV, 2013 WL 5762227, at *3 (Tex. App. Oct. 23, 2013) (affirming summary judgment where plaintiff's "scintilla of evidence"  failed to support defense that party was not authorized to sign promissory note); *Davis*, 2014 WL 1401677, at *3 (rejecting lack of authority defense

where party "has failed to present evidence that raises a genuine issue of material fact regarding the [] agent's authority or lack thereof"); *Pryor v. Everhome Mortg. Co.*, No. 3:13–CV–2963–D, 2014 WL 5802716, at *3 (N.D.Tex. Nov. 7, 2014) (granting summary judgment where party presented evidence that is "insufficient to permit a reasonable jury to find that [agent] was not an authorized signatory").

36.     HCMFA's unsubstantiated, conclusory statements in support of their assertion that the Notes were executed without authority cannot defeat Highland's *prima facie* case for summary judgment. *See United States v. Succession of Siddon*, 812 F. Supp. 674, 675 (W.D. La. 1993) (granting summary judgment on promissory note, noting "[m]ere conclusory rebuttals by the nonmoving party will not defeat a motion for summary judgment"); *Tiede v. Salazar*, 518 F. Supp. 3d 955, 965 (W.D. Tex. 2021) (granting summary judgment, noting that "allegations are insufficient to defeat summary judgment if they are nothing more than 'conclusory allegations, 'unsubstantiated assertions,' or constitute 'only a scintilla of evidence'"); *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014) (affirming summary judgment, noting that a genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party").

37.     Accordingly, Highland is entitled to summary judgment on HCMFA's Affirmative Defense regarding Mr. Waterhouse's authority to bind HCMFA to the Notes.

### iv.     There Is No Genuine Issue of Material Fact That HCMFA Is the Maker of the Notes

38.     HCMFA's attempt to inject ambiguity into the record by arguing that the Notes are unclear regarding HCMFA's status as "maker" fails for this same reason. *See* Response ¶¶ 58-62. HCMFA argues that there is "ambiguity as to whether Mr. Waterhouse intended to sign

the Notes at all" because "the signatures on the Notes do not unambiguously identify HCMFA as the maker." *Id.* ¶ 62. The HCMFA Notes are unambiguous as a matter of law.

39.     "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered into." *BCC Merchant Solutions, Inc. v. Jet Pay, LLC*, 129 F.Supp.3d 440, 466 (N.D.Tex. 2015) (internal quotations omitted); *see also Watkins v. Petro-Search, Inc.*, 689 F.2d 537, 538 (5th Cir. 1982) ("[W]hen a question relating to the construction of a contract or its ambiguity is presented, the court is to take the wording of the contract in the light of the surrounding circumstances, in order to ascertain the meaning that would be attached to the wording by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration"). "If, in the light of the surrounding circumstances, the language of the contract appears to be capable of only a single meaning, the court can then confine itself to the writing." *Watkins*, 689 F.2d at 538 (internal quotations omitted).

40.     A contract is unambiguous and will be enforced as written where it is "susceptible to only one reasonable construction." *BCC Merchant*, 129 F.Supp.3d at 466. "[A] cardinal rule of contract interpretation under Texas law is that the entire writing must be examined" and "no single provision taken alone [may be given controlling effect." *Id.* (citing Texas law) (internal quotations omitted). Texas courts consider the entire writing "to harmonize and effectuate all provisions such that none are rendered meaningless." *Id.* "An ambiguity is not created simply because the parties advance conflicting interpretations of the contract … Rather, an ambiguity exists only where such conflicting interpretations are 'reasonable.'" *Id.* (internal quotations and citations omitted); *see also AXA Art Americas Corp. v. Public Storage*, 208

F.Supp.3d 820, 828 (S.D.Tex. 2016) ("Ambiguity arises only when the applicable of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of … two meanings is the proper one") (internal quotations omitted); *Instone Travel Tech Marine & Offshore v. Int'l Partners, Inc.*, 334 F.3d 423, 431 (5th Cir. 2003) (A "contract is not ambiguous because it suffers from mere 'uncertainty or lack of clarity,'" noting "[t]he failure to include more express language of the parties' intent does not create an ambiguity when only one reasonable interpretation exists."). "Where the language is clear and definite, the contract is not ambiguous, and a court must apply the plain language as a matter of law." *Main Street Bank*, 2008 WL 11483415, at *4.

41.      There is no ambiguity regarding HCMFA's liability under the Notes.  The plain language of the Notes unequivocally identifies HCMFA as "*Maker*." *See* Ex. 1 (Exhibit 1) Appx. 9-11; Ex. 1 (Exhibit 2), Appx. 12-15 (emphasis in original).  Mr. Waterhouse, HCMFA's treasurer, signed the Notes on behalf of HCMFA as the "**MAKER.**" *See id.*  HCMFA's suggestion that the signature line makes it unclear whether "Mr. Waterhouse intended to bind HCMFA instead of himself," Response ¶ 61, is not, as a matter of law, not a "reasonable interpretation" that could create ambiguity.  *See AXA*, 208 F.Supp.3d at 828 (finding contract unambiguous as a matter of law where party's "interpretation is not reasonable in light of the [] agreement as a whole); *BCC*, 129 F.Supp.3d at 466 (finding no ambiguity in agreement based on its "plain" and "unequivocal" language, noting that party's "proffered interpretation" "does not reasonably account for the surrounding language" of agreement, would render such language "meaningless," and is "not reasonable under Texas law); *Instone*, 334 F.3d at 431 ("when properly confined to the four corners of the document … [defendant's] interpretation" is not "reasonable" because it "unambiguous holds [defendant] responsible" thereunder).

19

42. The Notes are unambiguous especially in light of their surrounding circumstances, including that, *inter alia*: (i) HCMFA knew, through its Treasurer, *i.e.*, Mr. Waterhouse, that the HCMFA Notes were treated as intercompany loans the day they were executed; (Ex. 54, Appx. 870-873; Ex. 56, Appx. 876-877); (ii) the Notes were disclosed as liabilities on HCMFA's balance sheets and audited financial statements at all relevant times (Ex. 45 at 17; Ex. 192 at 49:19-50:2, 54:6-9, 54:22-55:8, 55:23-56:3, 56:20-59-3, Appx. 3026-3029; and (iii) the Notes were represented as liabilities of HCMFA to third parties (Ex. 59 at 2, Appx. 885). Based on the unambiguous Notes and their undisputed surrounding circumstances, there is no reasonable interpretation that HCMFA is not bound under the Notes. *See Epps v. NCNB Tex.Nat'l Bank*, 838 F. Supp. 296 (N.D. Tex.), *aff'd sub nom. Epps v. NCNB Tex.*, 7 F.3d 44 (5th Cir. 1993) ("[A]pplying the undisputed facts to the unambiguous terms of the contract," the contract is not ambiguous); *Watkins*, 689 F.2d at 540 ("[T]he express language of the agreement-in the light of this circumstance (known to both parties who confected the agreement) and of others surrounding the agreement-in our opinion is susceptible with regard to the issue before us of only one reasonable (and thus unambiguous) meaning.").

43. For all these same reasons, HCMFA's application of Section 3.402(b)(2) of the Texas Business and Commercial Code does not support its defense. Section 3.402(b) provides, in pertinent part:

> [A] representative is liable on the instrument to a holder in due course that took the instrument without notice that the representative was not intended to be liable on the instrument if (i) the form of the signature does not show unambiguously that the signature is made in a representative capacity, or (ii) the represented person is not identified in the instrument.

TEX. BUS. & COMM. CODE § 3.402(b)(2). As discussed above, there is no credible evidence in the record that HCMFA "was not intended to be liable" on the Notes. The Notes also unambiguously

show that they were executed on behalf of HCMFA. There is thus no reasonable basis in support of HCMFA's argument Mr. Waterhouse, and not HCMFA, would be liable under the Notes. Section 3.402(b)(2) is, therefore, entirely irrelevant to the present facts. HCMFA's cite to *Savitch v. Southwestern Bell Yellow Pages, Inc.*, 2-04-257-cv, 2005, Tex. App. LEXIS 6215, *15-16 (Tex. App.—Fort Worth Aug. 4, 2005) is equally inapplicable. There, the court found that an agent's signature did not unambiguously show that it was made on behalf of a principal where the promissory note "did not identify" the principal, and the name of the principal "is not mentioned anywhere in the promissory note." *Id.* Here, by contrast, HCMFA is explicitly disclosed as the "Maker" of the Notes.

44.     HCMFA fails to raise a genuine issue of material fact sufficient to rebut Highland's *prima facie* case for breach of the Notes. *See BMO*, 2013 WL 12151486, at *2 (granting summary judgment where plaintiff "has established a prima facie case for breach of promissory notes wile Defendants have failed to raise a genuine issue of material fact as to any element of that case"); *Suttles*, 152 S.W.3d at 616 (affirming summary judgment for breach of promissory note where appellants' "vague statements" an summary judgment evidence did not "raise a material issue of fact concerning" affirmative defenses); *Park Cities*, 2012 WL 833189, at *3 (granting summary judgment for breach of promissory note where defendants filed to show the existence of genuine issue of fact for trial where they "failed to present any evidence contesting liability on the promissory note"); *Main Street*, 2008 WL 11483415, at *4 (granting summary judgment for breach of promissory note where plaintiff "establishes each element of its breach of contract claim" and defendant "fails to establish a genuine issue of material fact"); *Malin*, 817 F.3d at 250 (rejecting defendant's attempt to "inject ambiguity into the summary judgment record," where the "unrefuted summary judgment" shows defendant ratified the

agreement, noting that if defendant "had evidence to create an issue of fact to preclude summary judgment, it would have supplied it.")

45.     Accordingly, Highland is entitled to summary judgment on HCMFA's Affirmative Defense regarding ambiguity.

### v.     HCMFA Should Be Estopped from Avoiding Liability on the Notes

46.     HCMFA's attempt to escape liability under the Notes is improper as a matter of law.  Under Texas law, "if a party acts in a manner that recognizes the validity of a contract with full knowledge of the material terms of the contract, the party has ratified the contract and may not later withdraw its ratification and seek to avoid the contract."  *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 250 (5th Cir. 2016) (citing Texas law).    "Ratification may be manifested in several ways: (i) by intentionally accepting benefits under the contract; (ii) by remaining silent or acquiescing in the contract for a period of time after [they have] the opportunity to avoid it; and (iii) by recognizing [the] validity of the contract by acting upon it, performing under it, or affirmatively acknowledging it. *See id.* at n. 45; *Smith v. Stericycle, Inc.*, 538 F.Supp.2d 960, 968 (W.D.Tex. 2008) ("Ratification may be inferred by a party's course of conduct and need not be shown by express word or deed").  In other words, "any act inconsistent with an intent to avoid a contract has the effect of ratifying the contract," and precluding avoidance of such contract. *Smith*, 538 F. Supp. 2d at 968.

47.     HCMFA cannot, as a matter of law, avoid the Notes through any of their Affirmative Defenses.  The unrefuted summary judgment evidence establishes that HCMFA ratified the notes because it: (i) received the value of the loans in exchange for the Notes, (*see* Ex. 147), and (ii) has remained silent on the validity of the Notes since their inception—for two-and-a-half years until this Adversary Proceeding—including by not raising any of the Affirmative Defenses in connection with the Plan objections, (*see* Ex. 207 at 223:22-224:14, Appx. 4701-

4702). HCMFA has also affirmatively acknowledged the validity of the Notes by, *inter alia*, (i) representing to third parties, namely, the Retail Board, that the Notes were liabilities of HCMFA, (*see* Ex. 59 at 2, Appx. 885), and never informing anyone that there was an error in such letter to the Retail Board, (*see* Ex. 192 at 125:18-127:2, Appx. 3045-3046), (ii) carrying the Notes as liabilities on its balance sheet and audited financial statements, (*see* Ex. 45 at 17; Ex. 192 at 49:19-50:2, 54:6-9, 54:22-55:8, 55:23-56:3, 56:20-59-3), (d) never disputing Highland's MORs, which included the Notes as debts due and owing by HCMFA, (*see* Ex. 41, Appx. 816-825; Ex. 42, Appx. 826-835; Ex. 88, Appx. 1475-1486; Ex. 89, Appx. 1487-1496; Ex. 196, Appx. 3239-3240; Ex. 198., Appx. 3243-3244), and (e) never correcting Highland's audited financial statements, which were prepared based on management representation letters signed by Mr. Dondero and Mr. Waterhouse, (*see* Ex. 30, Appx. 605-641; Ex. 34, Appx. 741-787). HCMFA also never disputed the validity of the Notes after it received the Demand Letters, which expressly identified HCMFA as the "Maker" of the Notes. *See* Ex. 1 (Exhibit 3), Appx. 16-19.

48. HCMFA, therefore, cannot now escape liability on the Notes. *See Malin*, 817 F.3d at 250 (affirming summary judgment on enforcement of agreement where the "unrefuted summary judgment" shows that defendant entered into subject agreement, received value for agreement, and received notice of such agreement through various emails and receipts, noting that issue of "agency relationship" is irrelevant to ratification); *Lockwood Int'l, Inc. v. Wells Fargo Bank, N.A.*, 459 F.Supp.3d 827, 832 (S.D.Tex. 2020) (finding that "even giving party the benefit of the doubt on his [defense]," party waived any defense to enforcement of contract because "once he ratified its terms … he waived his right to raise it"); *Smith*, 538 F. Supp. 2d at 968 ("[b]ased on the undisputed evidence, [defendant] ratified the [] Agreement. It recognized it as valid, performed under it, and cannot now seek to void it"); *Stable Energy, L.P. v. Newberry*,

999 S.W.2d 538 (Tex. App. 1999) (affirming trial court's finding that appellants "were estopped from denying they were bound by it" where they ratified the agreement, noting "it would be unconscionable to permit [appellants] to deny that they are bound by the [] Agreement after" such ratification). For this additional reason, HCMFA's Affirmative Defenses fail as a matter of law.

### III.  CONCLUSION

WHEREFORE, Highland respectfully requests that the Court (i) grant its Motion, (ii) hold HCMFA liable for (a) breach of contract and (b) turnover for all amounts due under the Notes, and (iii) grant such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

Dated: February 7, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
           ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*