IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | Chapter 11 |
| L.P., | § | |
| | § | Case No. 19-34054-sgj11 |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 21-03004 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT | § | |
| FUND ADVISORS, L.P. | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S OBJECTION TO PLAINTIFF'S
MOTION TO STRIKE, FOR SANCTIONS, AND FOR CONTEMPT**

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iii

I.      SUMMARY .................................................................................................................1

II.     BACKGROUND ..........................................................................................................2

        A.      THE ADVERSARY PROCEEDING ...............................................................2

        B.      DEBTOR REFUSES TO PRODUCE EVIDENCE THAT WATERHOUSE
                DID NOT SIGN THE NOTES UNTIL AFTER WATERHOUSE IS DEPOSED .......................4

        C.      HCMFA FILES SECOND MOTION TO AMEND ANSWER ............................7

        D.      THE DEBTOR'S MSJ .................................................................................9

III.    ARGUMENTS AND AUTHORITIES.........................................................................11

        A.      NO GROUNDS TO STRIKE EVIDENCE OR DEFENSE...................................11

        B.      NO CONTEMPT AS A MATTER OF LAW....................................................16

        C.      BANKRUPTCY COURT LACKS JURISDICTION OVER CONTEMPT..............20

IV.     PRAYER .....................................................................................................................21

CERTIFICATE OF SERVICE .........................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Follenfant v. Rogers*, 359 F.2d 30 (5th Cir. 1966)...........................................................12

*Ingraham v. United States*, 808 F.2d 1075 (5th Cir. 1987) ...........................................15

*In re Highland Capital Management LP*, 2021 Bankr. LEXIS 2074
    (Bankr. N.D. Tex. August 3, 2021)..........................................................................17

*In re Skinner*, 917 F.2d 444 (10th Cir. 1990)..................................................................21

*John H. Carney & Assocs. v. State Farm Lloyds*, 376 F. Supp. 2d 697
    (N.D. Tex. 2005)........................................................................................................13

*Jurach v. Safety Vision, LLC*, 642 Fed. Appx. 313 (5th Cir. 2016)................................12

*Kaye v. Lone Star Fund (V), L.P.*, 453 B.R. 645 (N.D. Tex. 2011)................................13

*Nieto v. Nationwide Prop. & Cas. Ins. Co.*, 2011 U.S. Dist. LEXIS 171802
    (N.D. Tex. Jan. 10, 2011)..........................................................................................12

*Orix Fin. Servs. v. Thunder Ridge Energy Inc.*, 2005 U.S. Dist. LEXIS 41889
    (S.D.N.Y. 2005) ........................................................................................................14

*Ramirez v. Bexar County*, 2011 U.S. Dist. LEXIS 111678
    (W.D. Tex. Sept. 29, 2011)........................................................................................12

*Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203 (Tex. 1996)......................................13

*Travelhost Inc. v. Blandford*, 68 F.3d 958 (5th Cir. 1995) ...........................................16

*Watt v. Butler*, 457 Fed. Appx. 856 (11th Cir. 2012) ....................................................14

**Statutes and Rules**

28 U.S.C. § 636 .................................................................................................................21

Tex. Bus. & Comm. Code Ann. § 1.206 ........................................................................13

Tex. Bus. & Comm. Code Ann. § 3.308 ...................................................................12, 13

Fed. R. Civ. P. 8 .........................................................................................................13, 14

Fed. R. Civ. P. 11 .............................................................................................................12

FED. R. CIV. P. 12 ........................................................................................................................20

FED. R. CIV. P. 37 ........................................................................................................................20

TEX. R. CIV. P. 93 .......................................................................................................................12

**DEFENDANT'S OBJECTION TO PLAINTIFF'S**
**MOTION TO STRIKE, FOR SANCTIONS, AND FOR CONTEMPT**

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

COMES NOW Highland Capital Management Fund Advisors, L.P. ("HCMFA" or the "Defendant"), the defendant in the above styled and numbered adversary proceeding (the "Adversary Proceeding") commenced by Highland Capital Management, L.P. (the "Debtor"), and files this its *Objection* to the *Plaintiff's Omnibus Motion (a) to Strike Certain Documents and Arguments from the Record, (b) for Sanctions, and (c) for an Order of Contempt* (the "Motion"), respectfully stating as follows:

## I.    SUMMARY

1.      It is the Debtor who alleged that HCMFA signed the Notes as an element of the Debtor's cause of action, even though the Debtor knows that this is not true (and presented questionable evidence in support of this allegation).  All that HCMFA did was to cite to evidence negating this element of the Plaintiff's claim.  Most if not all of that evidence was the Plaintiff's *own* summary judgment evidence.  The Court's order denying HCMFA leave to amend its answer does not change this.  For many months, HCMFA has been denying that it executed the Notes. HCMFA did not concede that amending its answer was necessary, and this Court did not so find when it denied that motion.  That is a live issue, but, even so, all that HCMFA did was to negate the Plaintiff's own element; not present any evidence of any element of any affirmative defense that required separate pleading.  There is nothing to strike because the District Court, as part of the summary judgment proceedings, will determine whether citing to such evidence was appropriate and whether HCMFA was barred from making its argument, and this Court can make a report and recommendation on that issue.  If the District Court agrees with the Debtor, then it will simply

ignore HCMFA's argument, but in no event can this Court decide for the District Court what it will hear or what may be presented to the jury.

2.      With respect to sanctions and contempt, the Motion is groundless and is designed to harass HCMFA and its counsel. There is no order of this or any other court that HCMFA violated. Despite the Debtor's misrepresentation of what this Court's order says, never did this Court prohibit HCMFA from negating an element of the Debtor's claim or presenting any arguments or evidence in support. This Court denied a motion for leave to amend an answer and nothing more, and even then this Court did not determine that arguing that Waterhouse did not sign the Notes even required additional pleading. And again, all that HCMFA did was to cite to evidence to demonstrate that the Debtor's evidence and representation on the question of signing the Notes was in material dispute, if not outright false. Doing so cannot be contemptuous, as the purpose of the civil justice system is to seek the truth, as opposed to the Debtor's gamesmanship.

## II.      **BACKGROUND**

### A.      THE ADVERSARY PROCEEDING

3.      This Adversary Proceeding concerns two promissory notes (the "Notes") allegedly issued by HCMFA in favor of the Debtor, totaling approximately $7.4 million: one is for $5 million, and one is for $2.4 million. The Notes are allegedly signed by Frank Waterhouse ("Waterhouse"), the former chief financial officer of the Debtor and the then (and present) treasurer of HCMFA.

4.      HCMFA sought to withdraw the reference of this Adversary Proceeding due to the presence of jury rights and non-core issues. By its report and recommendation entered on July 8, 2021, this Court recommended that the District Court withdraw the reference of this Adversary Proceeding at the time that this Court certifies this Adversary Proceeding as trial-ready, concluding that this Adversary Proceeding was a non-core proceeding and that HCMFA had jury rights. *See*

Docket No. 50. On September 14, 2021, the District Court accepted the report and recommendation, ordering that the reference will be withdrawn when the Adversary Proceeding is trial-ready. *See* Civil Action No. 3:21-cv-00881-X (District Court Docket).

5. HCMFA had argued that the reference should be withdrawn immediately, including to avoid confusion and because no order of the Bankruptcy Court can decide for the District Court what evidence it or its jury will see:

- "Rather than having all pretrial decisions subject to *de novo* District Court review, it makes more sense to have the District Court make those decisions in the first instance . . . While the Defendant acknowledges the customary practice in this District that the District Court orders a withdrawal of the reference only when the case is certified as being trial ready, with the Bankruptcy Court handling pretrial matters as a magistrate, because of the jury rights involved and for the other reasons cited above, the Defendant submits that the better result for all litigants and both courts in this instance is for the District Court to immediately withdraw the reference, including over all pretrial matters." *Brief in Support of Defendant's Motion to Withdraw the Reference*, Docket No. 21, p. 12, ¶¶ 30-31.

- "Because the Bankruptcy Court cannot decide a dispositive motion, and because most if not all pretrial matters will govern the jury trial that only the District Court can conduct, the reference should be withdrawn immediately for judicial efficiency and to ensure that the District Court will make all pretrial decisions governing its trial." *Defendant's Reply In Support of Motion to Withdraw the Reference*, Docket No. 30, p. 8, ¶ 13.

- "So, Your Honor should recommend the withdrawal of the reference for my clients because I believe that it's clear we have a jury right. I believe that the reference should be withdrawn immediately. This Court has more than enough going on in this case. There is no crossover discovery here. And if we're going to go to a jury, then it really ought to be the District Court, that's the expert on jury trials, or its magistrate judge, that's the expert on jury trials, deciding pretrial and prejudgment matters, most of which will have to do probably with what the quality of evidence and what evidence there will be that can be even presented to the jury. Transcript of May 25, 2021 Status Conference, Docket No. 39 (15:14-24).

- "Withdrawing the reference now promotes judicial economy, as it will enable this Court to have the familiarity necessary to make key trial determinations on the more complex evidentiary and expert issues that arise in a jury trial. Moreover, because the trial of this Adversary Proceeding will be to a jury, this Court should not risk the Bankruptcy Court's determination of pretrial mattes, such as motions in limine, tying in any way this Court's hands. Simply put, while the Bankruptcy Court is certainly an expert on bankruptcy law and practice, this Adversary Proceeding does not involve the bankruptcy laws, and the Bankruptcy Court is certainly no expert on jury trials and jury practice. Or, if this Court will necessarily review *de novo* all pretrial orders entered by the Bankruptcy Court as this

Court prepares for trial, it would be a gross waste of the Bankruptcy Court's resources, this Court's resources, and the parties' resources to prepare, review, and contest any such orders." *Defendant's Limited Objection to Report and Recommendation*, Dist. Ct. Docket No. 5, p. 5, ¶ 12.

6.      Both this Court and District Court disagreed with this argument, thus setting up in some respects the problems faced by HCMFA in defending itself, as discussed below.  HCMFA therefore references the foregoing only to note that any procedural uncertainties and issues caused by the delayed withdrawal of the reference are not of its making, and are not its preference.  Rather, it was the Debtor who argued that the reference should be withdrawn at a later date.

**B.      DEBTOR REFUSES TO PRODUCE EVIDENCE THAT WATERHOUSE DID NOT SIGN THE NOTES UNTIL AFTER WATERHOUSE IS DEPOSED**

7.      On May 22, 2021, HCMFA filed its first motion to amend its answer to assert affirmative defenses.  *See* Docket No. 32.  That motion was not opposed by the Debtor, and the Bankruptcy Court granted that motion.  *See* Docket No. 46.

8.      HCMFA filed its first amended answer on July 6, 2021.  *See* Docket No. 48.  By that answer, HCMFA expressly denied that it executed the Notes.  *Compare* Docket No. 1 (complaint) at ¶¶ 14 and 15, *with* Docket No. 48 at ¶¶ 14 and 15.  Nevertheless, since May 22, 2021, the Debtor knew that HCMFA was denying that it had executed the Notes.

9.      In the meantime, on May 28, 2021, HCMFA served its first requests for production to the Debtor.  One of those requests requested "[a]ll Microsoft Word copies of the Notes, including Metada."  Rule 15 App. at 819.[1]  The Debtor responded to this request as follows:

> The Debtor objects to Request for Production No. 9 to the extent the term "metadata" is vague. Subject to the General Objections and this specific objection, the Debtor will conduct a reasonable search for, and produce, documents responsive to this Request.

---

[1]      As used herein, "Rule 15 App." means the *Defendant's Appendix In Support of Second Motion for Leave to Amend Answer*, filed in this Adversary Proceeding at Docket No. 86, which appendix is hereby incorporated in support of this Motion.

Rule 15 App. at 825.

10.     The Debtor did not refuse to produce these documents in writing, it did not state that "metadata" is vague—how could it be for any sophisticated litigant with capable litigation counsel?—and it said that it would search for, and produce, responsive documents. HCMFA took the Debtor at its word and expected a production or, if none was coming, that the Debtor did not have responsive documents.

11.     The parties deposed Waterhouse—the person who purportedly signed the Notes—on October 19, 2021. As of that date, the Debtor had yet to produce the originals with metadata of the Notes. During that deposition, defence counsel asked counsel for the Debtor to produce the originals of the Notes with metadata, which the Debtor <u>refused</u> to produce.[2] Nevertheless, Waterhouse testified that the signatures on the Notes appear to be electronic signatures and not his original signatures. *See* Rule 15 App. 348-52; 372-73.

12.     The Debtor finally produced the Notes in original format with metadata on October 25, 2021. *See* Rule 15 App. 815 (¶ 5). That production for the first time definitively showed that, not only did Waterhouse not sign the Notes, but Kristin Hendrix ("<u>Hendrix</u>"), a senior accountant for the Debtor, prepared the Notes and affixed pictures of Waterhouse's signature to the Notes, the same as counsel does below using the same picture as Hendrix, simply copied and pasted from what the Debtor produced:

---

[2]     "John, I also asked you for the Word versions of these notes so we could look at the properties, and you have not provided them. Are you intending to?

MR. MORRIS: No."

Rule 15 App. 198 (146:12-17).

**MAKER:**

_____

FRANK WATERHOUSE

13.     Thus, on October 25, 2021, it became clear that Waterhouse did not himself sign the Notes.  This would have been known far sooner had the Debtor complied with its basic discovery obligations—to produce the very Notes on which it seeks millions of dollars in recovery in their original format and with metadata.

14.     That is not the end of the analysis, because it is possible that Waterhouse authorized Hendrix to sign the Notes for him.  Both Waterhouse and Hendrix testified about this possibility. Waterhouse testified that, at the time of the Notes, he rarely signed documents electronically, any such documents would have had to have been approved by "legal," he sometimes authorized his administrative assistant (who was not Hendrix) to sign documents electronically, and, when he did so, there would be an e-mail trail or confirmation of such authorization.  *See* Rule 15 Motion App. at 344-48, 350-52, 372-73.

15.     On October 27, 2021, Hendrix testified that it was routine for "accounting" to prepare notes without approval from "legal," that she prepared the Notes, and that she affixed pictures of Waterhouse's signatures on the Notes.  *See* Rule 15 App. 466-69, 491, 494-95, 497-99. Hendrix had no memory of being authorized by Waterhouse to sign the Notes for him and it is obvious from her testimony that she just assumed she had that authority.  *See* Rule 15 Motion App. 497-99  ("In past practice he has always approved using his e-signature to execute documents"). No e-mail between Waterhouse and Hendrix whereby he approved her using his electronic signature has been produced.  *See* Rule 15 App. 815 (¶ 6).  And, she would not have, and did not,

even show the Notes to Waterhouse after she purported to sign his name to them. *See* Rule 15 Motion App. 499.

16. The third person of relevance to whether the Notes were signed is David Klos ("Klos"), Hendrix's boss, who asked her to prepare at least one of the Notes. His testimony is provided in detail below where HCMFA will demonstrate that the Debtor presented a sham affidavit from Klos in support of its MSJ.

## C. HCMFA FILES SECOND MOTION TO AMEND ANSWER

17. Thus, in late October, *after* the Debtor produced the originals of the Notes with metadata, it became clear that Hendrix, not Waterhouse, prepared the Notes and signed them using a picture of his signature. In light of this clear new evidence, on November 30, 2021, HCMFA filed its second motion for leave to amend its answer [docket no. 82] (the "Rule 15 Motion"). The purpose of the Rule 15 Motion was to more specifically deny that Waterhouse signed the Notes (recalling that, earlier, HCMFA denied that it "executed" the Notes) so as to avoid any dispute over unfair surprise of prejudice. HCMFA did not concede that this was an affirmative defense or that leave to deny an element of the Debtor's claim was required—as stated in paragraph 1 of that motion. *See* Docket No. 82 at ¶ 1 ("HCMFA does not concede that this relief is required, as it has already denied that it signed the notes"). Rather, as HCMFA explained, the Texas U.C.C. "appears to require a more express denial of signature." *See id.* Hence the reason for the motion.

18. The Debtor objected to the second motion to amend and the Court held a hearing on January 10, 2022. Amazingly, in response to the clear evidence that the Debtor defaulted on its discovery obligation to produce the originals of the Notes with metadata, the Debtor argued that it was incumbent upon HCMFA to file a motion to compel the Debtor to produce the documents:

> No motion to compel, no follow up in the month of July. No motion to compel, no follow up in the month of August. And mind you, this is at a time that Mr. Rukavina

has told you that they knew -- they thought that there might be a problem with the notes.

So they sit on their hands in July. They sit on their hands in August. They sit on their hands in September. They sit on their hands in the first two weeks of October. And within ten days of the follow up request, we produced the documents.

Transcript January 10, 2022 at 22:24-23:8.

19.     So much for the Debtor's obligation to comply with discovery, so much for *Dondi*, and so much for the farcical argument that anything about "metadata" is vague. Not only was the Debtor still required to produce what it understood the request sought, but the Debtor had no problem understanding what "metadata" meant when it finally did produce the originals with metadata, conveniently *after* HCMFA deposed Waterhouse. No—the Debtor did not produce these originals because it knew that Waterhouse did not sign the Notes and that it was Hendrix who instead affixed a picture of his signature to the Notes, and the Debtor wanted to keep this a secret as long as it could in hopes that HCMFA would miss the issue.

20.     The Court did not inquire of the Debtor why it did not timely produce the originals with metadata, much less chastise the Debtor for its discovery games. Instead, the Court denied the Rule 15 Motion by its *Order Denying Defendant's Second Motion for Leave to Amend Answer* [docket no. 123] (the "Denial Order") entered on January 14, 2022. HCMFA has sought review of the Denial Order before the District Court.

21.     The operative portion of the Denial Order simply states as follows:

The Motion is **DENIED**.

22.     Nowhere does the Denial Order find that leave to amend the answer was required to assert that Waterhouse did not sign the Notes. Nowhere does the Denial Order prohibit HCMFA from ever raising this argument again. Nowhere does the Denial Order prohibit HCMFA from

presenting any evidence on this issue in response to the Debtor's summary judgment motion or anything else.

**D.     THE DEBTOR'S MSJ**

23.     On December 17, 2021, the Debtor filed its motion for summary judgment and, more importantly, its brief in support thereof, seeking summary judgment on its breach of contract claims for the Notes [Docket No. 91 and 93] (the "MSJ").  In the MSJ, the Debtor described the elements of its cause of action as follows:

> To prevail on summary judgment for breach of a promissory note under Texas law, the movant need not prove all essential elements of a breach of contract, but only must establish (i) the note in question, (ii) that the non-movant signed the note, (iii) that the movant was the legal owner and holder thereof, and (iv) that a certain balance was due and owing on the note.

*See* Docket No. 95 (brief in support of MSJ) at ¶ 132 (emphasis added).

24.     It is the Debtor, therefore, that expressly raised the issue of whether Waterhouse signed the Notes.

25.     As evidence in support of its argument that HCMFA signed the Notes, the Debtor submitted two things.  First, the Debtor submitted the Declaration of David Klos [Docket No. 92] (the "Klos Declaration").  *See* Docket No. 95 at ¶ 135.  Second, the Debtor submitted an appendix in general support of the MSJ.  Docket No. 94.  That appendix included the deposition testimony of Waterhouse, Hendrix, and Klos.

26.     In its response to the MSJ, HCMFA argued and presented its evidence to defeat the "signature" element of the Debtor's cause of action by demonstrating the existence of a genuine issue of disputed, material fact regarding whether HCMFA even executed the Notes—as HCMFA was defending the Notes since May, 2021.  More precisely, HCMFA demonstrated that Waterhouse did not sign the Notes and that there is no evidence that he authorized Hendrix to sign

them for him. In the process, HCMFA did not seek to hide the fact of the Denial Order from the

District Court, expressly stating as follows:

> The Bankruptcy Court denied HCMFA's motion to amend its Answer to more affirmatively plead that the Notes were not signed, but HCMFA expressly argued that such amendment was not necessary and that HCMFA's prior Answer sufficiently placed the Debtor on notice under applicable law that HCMFA denied signing the Notes. . .
>
> Out of an abundance of caution, HCMFA is filing an objection with the District Court to the Bankruptcy Court's order, seeking the District Court's review of that order. To the extent necessary, HCMFA incorporates its motion to amend and its objection to the Bankruptcy Court's denial of that motion in this Brief, and reserves all rights with respect to the same.
>
> For the avoidance of doubt, any confusion over whether HCMFA needed to amend its Answer results from differences between the Texas Rules of Civil Procedure and the Federal Rules of Civil Procedure. The Texas Rules require specific denials in certain instances because the Texas Rules permit general denials. Tex. R. Civ. P. 92. The Federal Rules, on the other hand, require specific denials nearly all the time, including here. Fed. R. Civ. P. 8(b)(1)(B).

Docket No. 127 at pp. 25-26 n. 23.

27.     And, the evidence used by HCMFA to demonstrate that Waterhouse did not sign

the Notes comes from the deposition testimony of Waterhouse, Hendrix, and Klos—all deposition

transcripts contained in the Debtor's own summary judgment appendix.

28.     Setting aside the issue that the Debtor caused this situation by not complying with

its discovery obligations, it is elemental that HCMFA must present its arguments and evidence in

opposition to the MSJ, or risk waiver. New motions for summary judgment and responses and

appendices will not be filed before the District Court. Rather, the District Court will review the

current proceedings once this Court issues its report and recommendation. HCMFA presented its

arguments and its evidence, it informed the District Court of the fact of the Denial Order, and it

preserved its rights once the District Court considers all of these proceedings. Had HCMFA not

raised this defense and presented its evidence, the Debtor would certainly have argued that

HCMFA would have waived this critical defense and issue, since the District Court's review on summary judgment is to review *de novo* the Bankruptcy Court's report and recommendation and not to permit new arguments and evidence not presented to the Bankruptcy Court.

## III.    ARGUMENTS AND AUTHORITIES

### A.    NO GROUNDS TO STRIKE EVIDENCE OR DEFENSE

29.    The Debtor seeks to strike uncontroverted evidence that tends to negate an element of its claim, and apparently the related arguments, raised by HCMFA in response to summary judgment for the proposition that Waterhouse did not sign the Notes.  As for striking HCMFA's evidence, it was the Debtor's own evidence since HCMFA cited to the Debtor's evidence in demonstrating that Waterhouse did not sign the Notes.  HCMFA does not know how the Court would strike the Debtor's own evidence.  Rather, it appears that what the Debtor really seeks is an order striking any argument by HCMFA that Waterhouse did not sign the Notes.  But demonstrating that HCMFA signed the Notes is an element of the Debtor's own cause of action, as expressly pled by the Debtor in the MSJ.  And, HCMFA has denied that it executed the Notes. So, all that HCMFA did was to counter the Debtor's own allegation.

30.    The fundamental question is whether HCMFA adequately denied its signature on the Notes.  When HCMFA filed the Rule 15 Motion, it made it clear that, in filing that motion, HCMFA was proceeding out of an abundance of caution and without conceding that the amendment was necessary.  As HCMFA explained, the Texas Uniform Commercial Code appears to require an express denial of signature, but that does not answer the question of whether the existing denial was adequate.  The U.C.C. provides:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument are admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability

of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

TEX. BUS. & COMM. CODE ANN. § 3.308(a). Further uncertainty arises from TEX. R. CIV. P. 93, which requires a verified denial of a signature. However, that rule does not apply in Federal Court *Follenfant v. Rogers*, 359 F.2d 30, 31-2 (5th Cir. 1966); *Ramirez v. Bexar County*, 2011 U.S. Dist. LEXIS 111678, *16 (W.D. Tex. Sept. 29, 2011); *Nieto v. Nationwide Prop. & Cas. Ins. Co.*, 2011 U.S. Dist. LEXIS 171802, *5 n.7 (N.D. Tex. Jan. 10, 2011); *see* FED. R. CIV. P. 11(a).

31.     Here, there are two issues: the question of whether Waterhouse actually signed the Notes, and whether HCMFA signed the Notes. At the time of the answer, the Debtor had not produced the originals of the Notes, so HCMFA did not know that Hendrix signed them electronically. HCMFA therefore did not expressly and affirmatively allege that Waterhouse did not sign the Notes. But it did deny the only allegation in the Complaint regarding execution, *compare* Docket No. 1 (complaint) at ¶¶ 14 and 15 *with* Docket No. 48 at ¶¶ 14 and 15, and it denied that the signature was valid: "The Defendant did not authorize Waterhouse to sign the Notes or to bind the Defendant in any way to the Note." Docket No. 48, p. 7, ¶ 43. The statute requires the express denial of the "authority to make" the signature, which HCMFA unquestionably denied.[3] Therefore, "the validity of a signature is denied" in the answer and the Debtor must prove the fact of the signature, albeit with the statutory presumption of validity. The U.C.C. also defines "presumed" as follows:

> Whenever this title creates a "presumption" with respect to a fact, or provides that a fact is "presumed," the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence.

---

[3]     To the extent the Debtor points to allegations in the answer that Waterhouse "signed" the notes, "[r]ule 8 of the Federal Rules of Civil Procedure permits the alternative pleading of inconsistent claims and defenses …." *Jurach v. Safety Vision, LLC*, 642 Fed. Appx. 313, 317 (5th Cir. 2016).

TEX. BUS. & COMM. CODE at § 1.206. There is a presumption that Waterhouse signed the Notes even though HCMFA denied executing the Notes, but that presumption can be overcome and, if overcome, the Debtor bears the burden of proving signature: "the burden of establishing validity is on the person claiming validity." *Id*. at § 3.308(a).

32.    Leave to amend might have been required if HCMFA were raising a new affirmative defense, but it was not. Rule 8 lists various affirmative defenses, and the failure to sign a document is not one of them. FED. R. CIV. P. 8(c). An affirmative defense is more generally defined as follows:

> An affirmative defense by definition does not seek affirmative relief. When one pleads an affirmative defense, he or she sets forth facts or arguments which, if true, will defeat a plaintiff's claim, even though all matters alleged by the plaintiff in a complaint or petition are true.

*John H. Carney & Assocs. v. State Farm Lloyds*, 376 F. Supp. 2d 697, 703 (N.D. Tex. 2005). Likewise under Texas law: "[a]n affirmative defense does not seek to defend by merely denying the plaintiff's claims, but rather seeks to establish an independent reason why the plaintiff should not recover." *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 212 (Tex. 1996).

33.    Here, as the Debtor admits, it must prove that HCMFA signed the Notes as an element of its cause of action. The Debtor has a presumption aiding that inquiry, but the burden is always on the Debtor. Because the Debtor must prove the signature requirement as an element of its claim, the defense is not one "which, if true, will defeat a plaintiff's claim, even though all matters alleged by the plaintiff in a complaint or petition are true." Viewed differently, "an affirmative defense is a defense that the defendant bears the burden of proving." *Kaye v. Lone Star Fund (V), L.P.*, 453 B.R. 645, 679 (N.D. Tex. 2011) (internal quotation omitted). Here, by statute the signature is presumed, HCMFA must overcome that presumption, and, if HCMFA overcomes that presumption, the Debtor bears the burden of proving that Waterhouse signed the

Notes: "[i]f the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity." The trustee in a preference claim, for example, has the benefit of a presumption that the debtor was insolvent within the 90 days prior to the filing the petition, but, if that presumption is rebutted, the burden is still the trustee's to prove insolvency. This is no different.

34. As federal case law generally confirms, "[n]egation of a presumption is different from an affirmative defense." *Watt v. Butler*, 457 Fed. Appx. 856, 861 n. 2 (11th Cir. 2012). *See also Orix Fin. Servs. v. Thunder Ridge Energy Inc.*, 2005 U.S. Dist. LEXIS 41889 *37-39 (S.D.N.Y. 2005) (rejecting argument that non-execution of document is an affirmative defense despite rebuttable presumption of execution: "the non-execution of a guaranty is not an affirmative defense under Fed. R. Civ. P. 8(c). Rather, allegations of non-execution merely controvert an essential element of plaintiff's prima facie case -- due execution of the guaranties in question").

35. HCMFA has located no reported opinion that directly addressed the question of whether the denial of a signature on a promissory note is an affirmative defense or not, although the *Orix Fin. Serves.* case cited above is on point and presents persuasive authority. That is why HCMFA filed the Rule 15 Motion, because it wanted to raise the issue and ensure that it was not prejudicing itself. But, as HCMFA did not admit that the defense was an affirmative defense, and as this Court did not so find, the question still remains whether the existing denial is adequate. It should be the District Court, however, that makes that decision, which it can easily make in the context of the MSJ: if the District Court finds that the defense was not timely pled, then it can simply ignore it without the need to strike anything, and if the District Court concludes otherwise, then there is no issue at all.

36. And, even with an affirmative defense, "where an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise technical failure to comply with

---

Rule 8(c) is not fatal." *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987). Here, the defense cannot possibly come as any surprise, much less an unfair one, for the Debtor, who has known all along that it was Hendrix who affixed Waterhouse's signature to the Notes yet refused to produce that information in discovery until much later.

37.     The appropriate course, therefore, is not to strike anything. Rather, the appropriate course is to determine, as part of the summary judgment proceeding, whether HCMFA adequately challenged the signature in its live answer and is entitled to point out uncontroverted facts that negate an element of the Debtor's cause of action. This Court can provide its report and recommendation to the District Court on that issue, either as part of the MSJ or as part of the present Motion. The District Court should therefore decide the ultimate issues as part of deciding the MSJ, with the benefit of this Court's report and recommendation. To stress, in no event can or should this Court decide the adequacy of HCMFA's answer, as that would be a substantive ruling that would decide for the District Court what arguments and evidence the jury could see— something that would create a serious Constitutional issue as to this Court's jurisdiction and authority.[4]

38.     Moreover, the Denial Order is presently on review before the District Court.[5] If the District Court agrees with HCMFA's objection to the Denial Order, then there can be nothing

---

[4]     Indeed, the Debtor defends against HCMFA's objection to the Denial Order by arguing, in part, that the District Court cannot review that order except on appeal. Under that argument, this would mean that this Court would decide for the District Court what issues, arguments, and facts the jury will hear. And, HCMFA would only be permitted to appeal pretrial orders as part of a final judgment, thus appealing pretrial orders to the District Court then while appealing the judgment to the Fifth Circuit—a procedural and Constitutional quagmire that is surely to embroil the parties in years of complicated appeals and briefing, which is exactly the opposite of what the Debtor says it wants.

[5]     The Debtor criticizes HCMFA for seeking review of the Denial Order from the District Court. Such criticism is unfounded and seeks solely to color this Court against HCMFA. It was HCMFA that urged both courts to withdraw the reference immediately and not to have a bifurcated proceeding, partially in order to avoid confusion and the type of inter-court practice that now exists. Whether under Rule 41 or as part of the District Court's ability to review all non-final orders under Rule 54(b), HCMFA has every right to seek the District Court's review of the Denial Order and such review should not be held against HCMFA.

to strike while, if the District Court disagrees with that objection, then it will be the District Court, either at summary judgment or as the parties prepare for trial, that will decide what the effect of such a denial will be.

**B.** **NO CONTEMPT AS A MATTER OF LAW**

39.     HCMFA and its counsel take their obligation to comply with the Court's orders seriously, and they take the matter of contempt very seriously.  They have not violated any order of the Court.  HCMFA has acted to protect and preserve its rights and arguments in a situation not of its making, where on the one hand it has the right to a trial by jury before the District Court, while on the other both this Court and the District Court have agreed that pretrial matters should be handled by this Court.  This places HCMFA in a difficult situation of having to defend itself against dispositive pleadings when the District Court has yet to decide, on a final basis, this Court's pretrial orders.  HCMFA has acted respectfully, acknowledging this Court's pretrial orders and taking proper steps to seek review of those pretrial orders, while still defending itself against the Debtor's claims based on the facts.  Had HCMFA not pointed out those facts and arguments in its MSJ response, the Debtor would certainly have argued waiver, and this Court and the District Court could easily have agreed with that argument.  And, as will be shown below, the Debtor relied on a sham affidavit in its MSJ.  In any event, and HCMFA and its counsel's good faith aside, there is no possible contempt as a matter of law.

40.     "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995).  Thus, as the Court has concluded, "the party seeking an order of contempt in a civil contempt proceeding need only establish, by clear and convincing evidence, (1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply

with the court's order." *In re Highland Capital Management LP*, 2021 Bankr. LEXIS 2074 at *31 (Bankr. N.D. Tex. August 3, 2021). And, while a court need not anticipate every action that could be taken in response to its order, "[t]o support a contempt finding in the context of an order alleged to have been violated, the order must delineate 'definite and specific' mandates that the defendants violated." *Id.*

41.    The Denial Order simply denied HCMFA leave to amend its answer. It did not prohibit HCMFA from asserting that Waterhouse did not sign the Notes. It did not command HCMFA to do or not to do anything. It did not even find that the defense was an affirmative defense that was waived. Certainly it is not a "definite and specific order" that commands performance. There may be consequences flowing from that order, such as alleged denial of an affirmative defense as untimely or waived, but that is not contempt.

42.    Yet, the Debtor makes the following patently incorrect statement in support of contempt: ". . . the [denial order] <u>expressly prohibited</u> HCMFA from asserting the Barred Defense . . ." *See* Docket No. 162 at ¶ 38 (emphasis added). Again, the Denial Order provides that "[t]he Motion is DENIED." That is not a prohibition, and certainly not an express prohibition, against HCMFA raising its defense or doing or refraining from doing anything. The Debtor simply, and obviously, misrepresents the terms of the Denial Order.

43.    Equally as importantly, the evidence that HCMFA used to demonstrate that Waterhouse did not sign the Notes was actually offered into evidence by the Debtor itself in its MSJ. *See* Docket No. 94 at p. 9 (Waterhouse deposition); p. 13 (Hendrix deposition); and p. 13 (Klos deposition). Is the Debtor suggesting that it can be contempt to point to evidence that the Debtor itself offered and admitted into the MSJ Proceedings? It is the Debtor that alleged, in its MSJ, that HCMFA "signed" the Notes. It is the Debtor that had to prove this as an express element of its cause of action, as it itself informed the Bankruptcy Court. All that HCMFA did was to

demonstrate, at a minimum, that genuine issues of material fact precluded summary judgment on this element—exactly as it is permitted to do and required to do under Rule 56. The Denial Order in no way addressed that issue or prohibited any discussion of the defense or the presentation of evidence in support of that evidence—and the Debtor's own evidence at that. There is no possible contempt.

44. In this respect, it should also be noted that the Debtor could have, but did not, rely on the above U.C.C. presumption of the validity of the signatures on the Notes in support of its MSJ. Instead, the Debtor affirmatively argued and represented that HCMFA signed the Notes. Whatever else may be said about Waterhouse's authority to bind HCMFA or Hendrix's authority to sign Waterhouse's signature, it is a fact that Waterhouse did not sign the Notes— Hendrix did, using an electronic picture of Waterhouse's signature. What the Court should also understand is that HCMFA cited to this contrary evidence partially because the Debtor presented a sham affidavit in support of its argument that HCMFA signed the Notes. In its MSJ, the Debtor expressly states that "[t]o prevail on summary judgment for breach of a promissory note under Texas law, the movant need not prove all essential elements of a breach of contract, but only must establish . . . (ii) that the non-movant signed the note . . ." Docket No. 95, p. 40, ¶ 132. The Debtor then alleges:

> The HCMFA Demand Notes are: (i) valid, (ii) signed by HCMFA, and in Highland's favor, (Klos Dec. ¶¶ 21-22, Exs. G, H), and (iii) as of (a) December 11, 2020, the total outstanding principal and accrued but unpaid interest due under the HCMFA Notes was $7,687,653.06, and as of (b) December 17, 2020, the total outstanding principal and accrued but unpaid interest due under the HCMFA Notes was $7,874,436.09, (Klos Dec. ¶ 40).

Docket No. 95, p. 41, ¶ 135. (emphasis added).

45.     Klos begins his declaration by stating "[t]his Declaration is based on my personal knowledge."  Docket No. 92 at ¶ 1.  However, this statement contradicts Klos's sworn deposition testimony, the hallmark of a sham affidavit.

46.     Klos does not have "personal knowledge" that HCMFA "executed" the Notes.  Rather, as he testified at his deposition, he asked Hendrix to prepare the Notes.  Rule 15 App. 736-37 (83:19-84-24).  And:

> Q. After you asked Ms. Hendrix to prepare this note, did you have any further role with respect to the papering, preparation, or execution of that note?
>
> A. Not that I can remember.
>
> Q. Would you have had any role in having either or both of the notes actually signed electronically or by ink by Mr. Waterhouse?
>
> A. Likely not, no.
>
> *       *       *
>
> Q. On the $5 million note, do you remember if you had any role with respect to its physical papering or execution?
>
> A. Not that I recall.
>
> Q. To the best of your memory, your role would have been done by instructing your team, hey, here is these new loans, go paper it up; is that accurate?
>
> A. On the upfront side. I suppose my role would have also included on the back end making sure that the actual payment had occurred. But that would have been doing that realtime, seeing the funds went out, and that, most importantly, that the consent fee had been paid from HCMFA to the transfer agent.

*Id.* 736-38 (83:19-85:16).

47.     Klos has no personal knowledge that HCMA "executed" the Notes.  His role ended after he asked an assistant to prepare the Notes.  He was not involved, or at least does not remember being involved, with anything after asking Hendrix to prepare the $2.4 million note, and does not remember having anything to do with the papering or execution of the $5 million note at all.  For

him to state that he had personal knowledge that HCMFA "executed" the Notes contradicts his sworn deposition testimony. Equally as remarkable, the Debtor did not present a similar declaration from Hendrix, who *does* have personal knowledge of the execution of the Notes, as she drafted them and then affixed Waterhouse's signatures to them, but that would not have been beneficial to the Debtor since that would only prove that Waterhouse did not sign the Notes and that he did not authorize Hendrix to sign the Notes for him.

48.     With respect to the Debtor's allegations that HCMFA and its attorneys violated Rule 12 and Rule 37, the Debtor states that, under Rule 12(f), the Bankruptcy Court may strike an insufficient defense from a pleading. But, that the Bankruptcy Court may do so, does not mean— and cannot possibly mean—that HCMFA violated Rule 12. Under Rule 37, a court can redress violations of discovery orders. That has nothing to do with whether HCMFA may raise an argument and present evidence in support of the argument. One might expect the Debtor to argue waiver for failure to plead, which the District Court can decide in connection with deciding the MSJ, but not that the defense should be barred because HCMFA committed a discovery violation. Never mind the fact that the Debtor violated its discovery obligations by refusing to produce the Notes in their original format with metadata. The Debtor's allegations that HCMFA violated Rules 12 and 37, therefore, are baseless and absurd.

## C.     **BANKRUPTCY COURT LACKS JURISDICTION OVER CONTEMPT**

49.     This is a non-core proceeding over which this Court may or may not be acting as a magistrate judge (although this Court has previously stated that it is serving as a magistrate).[6] This Court therefore lacks core jurisdiction to find contempt or to issue sanctions for contempt. The Court has core jurisdiction to enforce an order of contempt where this Court has core jurisdiction

---

[6]     *See Memorandum Opinion and Order Denying Arbitration Request and Related Relief*, Docket No. 110 in Adversary No. 21-3005, p. 2 n.1, p. 3 n.5.

over the underlying order.  *See, e.g., In re Skinner*, 917 F.2d 444, 448 (10th Cir. 1990).  Since the Denial Order is not a core proceeding, any contempt of that order is likewise a non-core proceeding.  And, if this Court is acting as a magistrate, then federal statute requires that the Court provide a report and recommendation of the alleged contempt to the District Court (since this Court is not proceeding to enter a final judgment with the consent of the parties).  *See* 28 U.S.C. § 636(e)(6)(B).

50.     Therefore, HCMFA objects to this Court's entry of any final order of contempt against itself or its counsel and requests instead that this Court provide the District Court with a report and recommendation on that issue.

## IV.     PRAYER

WHEREFORE, PREMISES CONSIDERED, HCMFA respectfully requests that the Court enter an order (i) denying the Motion; (ii) alternatively, providing a report and recommendation to the District Court if the Court is inclined to grant the Motion; and (iii) granting HCMFA such other and further relief to which it may be justly entitled.

RESPECTFULLY SUBMITTED this the 28th day of February, 2022.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina
    State Bar No. 24030781
    Julian P. Vasek.
    State Bar No. 24070790
    500 N. Akard Street, Suite 3800
    Dallas, Texas 75202-2790
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375
    Email:  drukavina@munsch.com
    Email: jvasek@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on February 28, 2022, a true and correct copy of the foregoing document, including any exhibit(s) thereto, was served on counsel for the Debtor via the Court's CM/ECF system.

By: <u>/s/ Davor Rukavina</u>
       Davor Rukavina